UNITED STATES DISTRICT COURT           **FILED ELECTRONICALLY**
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                                          :

THE GAP, INC. and GAP (APPAREL) LLC,     :

                                        :          07 Civ. 9614 (AKH)

                Plaintiffs,         :

                                          :             ECF CASE

             -against-           :

                                          :

G.A.P. ADVENTURES INC.,            :

                                          :

                     Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM IN OPPOSITION TO INTRODUCTION OF EVIDENCE AT TRIAL PRODUCED PURSUANT TO FED. R. CIV. P. 26(e) OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY

Bruce P. Keller
bpkeller@debevoise.com
Michael R. Potenza
mpotenza@debevoise.com
Camille Calman
ccalman@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
(212) 909-6000
*Attorneys for Plaintiffs The Gap*
*Inc. and Gap (Apparel), LLC*

Dated:  New York, New York
         February 7, 2011

# **TABLE OF CONTENTS**

Preliminary Statement ..................................................................................................1

Background ..................................................................................................................2

Argument ....................................................................................................................5

I.    G.A.P.'s Post-Deadline Discovery Is Not "Supplementation." ..................................5

II.   G.A.P. Has Not Demonstrated "Good Cause" To Reopen Discovery. ......................8

      A.    G.A.P. Had "Ample Opportunity" To Conduct Its Recent Discovery
            Before The Discovery Deadline. ......................................................................9

      B.    Reopening Discovery To Admit Cumulative Third-Party Use Evidence
            Would Prejudice Gap And Disrupt The Trial. ................................................11

Conclusion ................................................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Alston v. Cahill*,
  2008 WL 5120735 (D. Conn. Dec. 5, 2008)................................................10

*Bakalar v. Vavra*,
  ___ F. Supp. 2d ___, 2011 WL 165407 (S.D.N.Y. Jan. 14, 2011)........................11,16

*Beller ex rel Beller v. U.S.*,
  221 F.R.D. 696 (D.N.M. 2003)................................................6

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
  769 F.2d 919 (2d Cir. 1985)................................................9

*Convolve, Inc. v. Compaq Computer Corp.*,
  223 F.R.D. 162 (S.D.N.Y. 2004) .............................................15

*Essence Commc'ns, Inc. v. Singh Indus., Inc.*,
  703 F. Supp. 261 (S.D.N.Y. 1988) ..........................................14

*Estee Lauder Inc. v. Gap, Inc.*,
  108 F.3d 1503 (2d Cir. 1997)................................................16

*Gallagher v. Southern Source Packaging, LLC*,
  568 F. Supp. 2d 624 (E.D.N.C. 2008)........................................6

*Gavenda v. Orleans County*,
  1996 WL 377091 (W.D.N.Y. June 19, 1996)................................9

*Goodby's Creek, LLC v. Arch Ins. Co.*,
  2009 WL 1139575 (M.D. Fla. Apr. 27, 2009).........................6, 7

*Gotlin v. Lederman*,
  2007 WL 1429431 (E.D.N.Y. May 7, 2007) ...........................9, 11, 12

*Grochowski v. Phoenix Constr.*,
  318 F.3d 80 (2d Cir. 2003).................................................9

*Harris v. Computer Assoc. Int'l, Inc.*,
  204 F.R.D. 44 (E.D.N.Y. 2001) .............................................10

*Hewlett-Packard Co. v. Factory Mut. Ins. Co.*,
    2006 WL 1788946 (S.D.N.Y. June 28, 2006) ............................................................6

*Hussain v. Nicholson*,
    435 F.3d 359 (D.C. Cir. 2006) ...................................................................................11

*In re September 11 Litigation*,
    621 F. Supp. 2d 131 (S.D.N.Y. 2009)........................................................................12

*Jeannite v. City of New York Dep't of Buildings*,
    2010 WL 2542050 (S.D.N.Y. June 21, 2010) ...........................................................11

*Katel L.L.C. v. AT&T Corp.*,
    2009 WL 773498 (S.D.N.Y. Mar. 17, 2009) .......................................................6, 10

*Kinark Corp. v. Camelot*,
    548 F. Supp. 429 (D.N.J. 1982) .................................................................................14

*King v. Friend of Farmer, Inc.*,
    2000 WL 290355 (S.D.N.Y. Mar. 21, 2000) ..............................................................9

*Lang v. Retirement Living Publ'g*,
    949 F.2d 576 (2d Cir. 1991).......................................................................................14

*Lexington Mgmt. Corp v. Lexington Capital Partners.*,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998)......................................................................1, 14

*Lidle v. Cirrus Design Corp.*,
    2010 WL 4751580 (S.D.N.Y. Nov. 18, 2010)...........................................................12

*McGregor-Doniger Inc. v. Drizzle Inc.*,
    599 F.2d 1126 (2d Cir. 1979).....................................................................................16

*McKay v. Triborough Bridge and Tunnel Auth.*,
    2007 WL 3275918 (S.D.N.Y. Nov. 5, 2007).............................................................12

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*,
    145 F.3d 320 (5th Cir. 1998) .......................................................................................6

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
    818 F.2d 254 (2d Cir. 1987).......................................................................................13

*Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*,
  182 F.3d 133 (2d Cir. 1999)....................................................................................15

*Nabisco v. Warner Lambert Co.*,
  32 F. Supp. 2d 690 (S.D.N.Y. 1999)........................................................................14

*Paone v. Oberholtzer*,
  2007 WL 2973587 (N.D.N.Y. Oct. 9, 2007) .............................................................11

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000).......................................................................................8

*Polaroid Corp. v. Polarad Elec. Corp.*,
  287 F.2d 492 (2d Cir. 1961).....................................................................................16

*Reid v. Lockheed Martin Aeronautics Co.*,
  205 F.R.D. 655 (N.D. Ga. 2001).................................................................................6

*Scarves by Vera, Inc. v. Todo Imports, Ltd.*,
  544 F.2d 1167 (2d Cir. 1976)...........................................................................2, 13, 14

*Scott v. City of New York Dep't of Corr.*,
  2007 WL 4178405 (S.D.N.Y. Nov. 26, 2007)...........................................................10

*Stathos v. Bowden*,
  728 F.2d 15 (1st Cir. 1984).......................................................................................13

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998)......................................................................................14

*Thieriot v. Jaspan Schlesinger Hoffman, LLP*,
  2010 WL 4038765 (E.D.N.Y. Sept. 30, 2010) ...........................................................8

*Trustees of Columbia Univ. v. Columbia Healthcare Corp.*,
  964 F. Supp. 733 (S.D.N.Y. 1997) ...........................................................................13

*U.S. v. Schatzle*,
  901 F.2d 252 (2d Cir. 1990)......................................................................................13

*Ventra v. U.S.*,
  121 F. Supp. 2d 326 (S.D.N.Y. 2000).........................................................................7

*Warfield v. City of Chicago*,
    565 F. Supp. 2d 948 (N.D. Ill. 2008) ...........................................................................15

*Western Publ'g Co., Inc. v. Rose Art Indus., Inc.*,
    910 F.2d 57 (2d Cir. 1990) ...........................................................................................14

*Yrityspankki Skop Oyj v. Delta Funding Corp.*,
    1999 WL 1018048 (S.D.N.Y. Nov. 9, 1999) ...............................................................10

**STATUTES AND RULES**

15 U.S.C. § 43(c) .............................................................................................................13

15 U.S.C. § 1125(1) ........................................................................................................16

Fed. R. Civ. P. 16 ........................................................................................................8, 11

Fed. R. Civ. P. 26 ......................................................................................................1, 5, 6

Fed. R. Civ. P. 30(b)(6) ....................................................................................................3

Fed. R. Civ. P. 37 ........................................................................................................1, 7

**OTHER AUTHORITIES**

Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE
    AND PROCEDURE (2010) .............................................................................................8, 9

Plaintiffs The Gap, Inc. and Gap (Apparel) LLC ("Gap") submit this memorandum in opposition to the use of:  (a) documents, collected and produced nearly two years after the close of fact discovery; and (b) testimony of multiple third-party investigators about those documents, which relate to purported third party uses of the word "gap."

## PRELIMINARY STATEMENT

The motion by G.A.P. Adventures, Inc. ("G.A.P.") to expand the record should be denied because it rests on two flawed premises.

*First*, G.A.P. argues because expansion is warranted as proper supplementation under Rule 26(e) of the Federal Rules of Civil Procedure, to exclude it would amount to an inappropriate sanction under Rule 37(c).  Def. Br. at 5-8.  That is incorrect.  Multiple cases make clear that supplementation is an obligation, triggered by the need to correct previously misleading discovery responses.  It is not a right, nor is it available to extend or circumvent expired discovery deadlines.  *See* pp. 5-8, *infra*.

*Second*, G.A.P. argues, alternatively, that discovery should be reopened.  That, too, is incorrect.  G.A.P. does not come close to meeting the strict standards to reopen, only weeks before trial, a discovery deadline that expired years ago.  *See* pp. 8-16, *infra*.

When arguments like these have been made in other cases, courts repeatedly have denied similar requests.  Here, G.A.P. is in a much worse position than the moving parties in those other cases because not only has it sat on the information on which it now wishes to expand, but under well-settled Second Circuit law, the supplementation G.A.P. seeks is "incompetent" to prove the point G.A.P. wishes to assert.  *Lexington Mgmt. Corp*

*v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 282 (S.D.N.Y. 1998).  As explained below, the fact that third parties may use the word "gap" in some fashion is of no value unless put in context.  It must be accompanied by detailed evidence of how consumers perceive those marks.  *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976).  *See* pp. 12-15, *infra*.  G.A.P. has no such information.  As the Court put it at the January 14, 2011 status conference:  If no one has ever heard of these third party uses, why do they matter?  The answer is they do not.

## BACKGROUND

Fact discovery was conducted and closed over two years ago on the topic G.A.P. now seeks to reopen.  Docket Entry No. 24.  Early in discovery, Gap requested "[d]ocuments sufficient to identify any corporate name, trade name, trademark or service mark, or any application to register any corporate name, trade name, trademark, or service mark in the United States, that is owned by a third party and that Defendant contends is relevant to the parties' claims and defenses in this litigation," Declaration of Bruce P. Keller (hereinafter "Keller Decl.") Ex. 1 at Request # 26.[1]

In response, G.A.P. produced a six-thousand-page trademark search, conducted by Corsearch and dated November 21, 2007 (the "2007 Corsearch Report") (GA005000-GA011090).

---

[1]   Gap propounded this request because several of the affirmative defenses asserted in G.A.P.'s Answer, including acquiescence and estoppel, made clear it intended to rely on evidence of third-party use.  *See* Answer (3rd, 8th, 9th Affirmative Defenses).  G.A.P. agreed to produce "any relevant non-privileged documents responsive to this request."  G.A.P. Adventures, Inc,'s Responses to Plaintiff's First Request for the Production of Documents, May 23, 2008, at Response # 26.

That search listed third-party companies that purport to use the word "gap" as part of their name.  It disclosed most of the third-party uses that are the subject of G.A.P.'s recent, post-discovery productions.  For example, in its recent January 28, 2011 production, the last 150 uses for which documents were produced (bates numbered GA1522860-GA1523819, GA1523843-GA1523886) are virtually identical to, and often in the same order as, uses listed in that Report.  Although G.A.P. now claims it "was unable to determine with certainty . . . whether that search was produced in discovery or withheld on the basis of privilege or work product," Declaration of Pasquale A. Razzano ("Razzano Decl.") ¶ 9, the document is bates numbered, does not appear on G.A.P.'s privilege log, and Gap has it.

During that period, Gap also produced, in response to G.A.P.'s discovery requests,[2] over 3,000 pages of documents from its own files concerning enforcement actions relating to over 65 third parties.  Based on these and other documents, G.A.P. conducted depositions on the issue of third-party uses.  It extensively questioned Julie Gruber, Esq., Gap's Vice President and Assistant General Counsel and Rule 30(b)(6) witness designated to testify concerning "Gap's trademark enforcement efforts involving the Gap name and marks in the United States."  Keller Decl. Ex. 3 (Rule 30(b)(6) deposition notice); *id.* Ex. 4 (*see*, *e.g.*, Gruber Tr. 132:2-136:25 ("Watch the Gap");

---

[2]   Keller Decl. Ex. 2 at Request #2 ("All documents pertaining to Gap's decision not to take formal action against a third parties' use of the word or letters 'GAP', 'G A P', 'G.A.P.' or 'G.A.P' in a mark, trade name, or business name, including all documents pertaining to the third party use, and the reasoning behind Gap's decision not to take formal action.").

155:10-159:21 ("Dynamic Gap"); 160:11-162:20 ("Grip Gap"); 220:20-230:18 ("Gap Plan"); 251:11-255:20 ("No Gap"); 275:15-279:20 ("Gap-Wrap"); 280:3-283:4 ("ZeroGap"); 283:11-289:20 ("Gaplus").

This same issue – third party use – was also discussed with the Court at the December 12, 2008 status conference.  At that conference, the Court expressed serious doubt that *any* third-party enforcement activities were the proper subject of discovery. Accordingly, Gap informed G.A.P. that it had "met or exceeded its discovery obligations with respect to enforcement activities involving third-party marks" and would not produce additional documents.  Keller Decl. Ex. 5 (December 23, 2008 letter from Lorin Reisner to Alan M. Sack).  G.A.P. was thus fully on notice that document discovery on this topic was over, but did not seek to compel production of any further documents.

On top of its deposition of Ms. Gruber, G.A.P. subpoenaed documents from three third-party users and deposed their representatives:  Joseph Antonacci of MTA Metro North Railroad in October 2008, about the railroad's use of the phrase "watch the gap;" Patricia Russell of the Long Island Railroad in March 2009, also concerning the phrase "watch the gap;" and Tom Grace of Grace Premier Fitness in February 2009 about his use of the phrase "GRIP GAP."[3]

That is how the record stood until a few weeks ago, when G.A.P. began to produce various certificates of incorporation, web site printouts and storefront photos

---

[3]  Because these depositions were noticed prior to the close of discovery and no trial date had been set, Gap did not object to G.A.P. taking them after the discovery deadline.

purporting to evidence third-party uses of the word "gap" by a variety of commercially insignificant businesses.  To date, G.A.P. has produced 756 additional documents (over 3,000 pages) relating to more than 300 third party uses.  Representative samples of these documents are attached as Exhibit 6 to the Keller Declaration.  The last of these productions to date arrived 7 days ago – on January 31, 2011.

G.A.P., however, apparently planned this post-discovery investigation months earlier.  It commissioned Corsearch, in July of 2010, to prepare an updated report concerning third-party uses and retained a private investigative firm, Kelly Pioneer Group.  Razzano Decl. ¶ 19.  G.A.P. produced the "updated" Corsearch report on August 24, 2010.  Razzano Decl. ¶ 12.[4]  G.A.P., however, did not notify Gap or the Court of its plans to try to reopen discovery in this matter, even though it easily could have done so at the October 8, 2010 status conference when other outstanding discovery issues were discussed.

## ARGUMENT

## I.     G.A.P.'s Post-Deadline Discovery Is Not "Supplementation."

The duty to supplement prior discovery is triggered when a party learns "in some material respect the disclosure or [discovery] response is incomplete or inaccurate."  Fed. R. Civ. P. 26(e)(1)(A)-(B).  That knowledge triggers a duty to correct inadvertent errors or omissions that materially impact prior statements by making them "inaccurate" or misleading because they are "incomplete."  Fed. R. Civ. P. 26(e)(1)(A).  G.A.P.'s motion,

---

[4]     Because that report did not materially change any information already in the record and no trial date had been set, Gap, again, did not object to G.A.P.'s production.

however, is not about evidence that G.A.P. recently discovered.  It fixes no error or

material omission.  It just adds more of the same to a record G.A.P. previously created

while discovery was open.

One court succinctly put it this way:  "Rule 26 imposes a *duty* on [parties]; it

grants them no *right* to produce information in a belated fashion."  *Reid v. Lockheed*

*Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (emphasis in original).

Another stated:  Rule 26(e) is not a "license" to "sandbag one's opponent" with new

information that should have been produced during discovery.  *Beller ex rel Beller v.*

*U.S.*, 221 F.R.D. 696, 701 (D.N.M. 2003).  To guard against that risk, courts strictly limit

"true supplementation" to "correcting inadvertent errors or omissions," thus preventing

discovery "gamesmanship."  *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d

624, 631 (E.D.N.C. 2008).  Any other result would turn federal court litigation into "a

form of Chinese water torture in which the [party] is slowly driven insane by a never-

ending drip of evidence . . . ."  *Katel L.L.C. v. AT&T Corp.*, 2009 WL 773498, at *1

(S.D.N.Y. Mar. 17, 2009) (Howell, J.).

That is why courts repeatedly reject requests, like G.A.P.'s, when made "to

provide an extension" of scheduling deadlines.  *Metro Ford Truck Sales, Inc. v. Ford*

*Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998); *see also Hewlett-Packard Co. v. Factory*

*Mut. Ins. Co.*, 2006 WL 1788946, at *14 (S.D.N.Y. June 28, 2006) ("[T]he rule requiring

supplementation cannot be used as a justification for the belated assertion of new

damages theories that could have been raised earlier . . . ."); *Goodby's Creek, LLC v.*

*Arch Ins. Co.*, 2009 WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009) (Rule 26(e) does not

cover "failures of omission because the expert did an inadequate or incomplete preparation").

Even were it proper supplementation, G.A.P. Adventures fails to provide any "substantial justification" for its failure to produce it earlier.  It therefore can, and should, be excluded under Fed. R. Civ. P. 37(c)(1) as well.  *See Ventra v. U.S.*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000) (excluding witness where party failed to provide "any substantial justification" for failing to disclose during discovery; failure not "harmless" because timely disclosure would have allowed witness to be deposed).

G.A.P. also is mistaken when it tries to analogize its request to other, post-deadline discovery specifically ordered, in advance, by the Court.  Def. Br. at 3 n.3; Razzano Decl. ¶¶ 14-18.  Those pre-approved exceptions to the cut-off were based on, for example, G.A.P.'s clear failure to honor pre-existing discovery obligations.  Keller Decl. Ex. 7 (4/16/10 Hearing Tr. 4:12-9:25) (reopening discovery for completing the record regarding thousands of pages of documents produced after the close of discovery by G.A.P.); Docket Entries 66, 70, 73 (granting additional discovery relating to G.A.P.'s new logo).

For example, in the days immediately following the close of expert discovery on July 13, 2009, G.A.P. unilaterally adopted a new logo on its website, without the periods that had previously shown "G.A.P." to be an acronym for "Great Adventure People." The Court authorized "more discovery" into all the "reasons for the change in the logo." Keller Decl. Ex. 8 (2/17/10 Hearing Tr. 5:18-24).  Then, *after* Gap took Mr. Poon Tip's deposition on April 1, 2010, it learned – on the morning of the April 16, 2010 status

conference – that G.A.P. had not produced thousands of pages regarding its new logo. Keller Decl. Ex. 7 (4/16/10 Hearing Tr. 3:18-24).  The Court ordered still further discovery, including another deposition of Mr. Poon Tip at G.A.P.'s expense.  *Id.* (4/16/10 Hearing Tr. 9:21-24).

Accordingly, far from being "produced without leave of Court," Razzano Decl. ¶ 14, the need for Dr. Gerald Ford's supplemental survey on G.A.P.'s new logo was discussed with the Court at the February 17, 2010 status conference.  Keller Decl. Ex. 8 (2/17/10 Hearing Tr. 20:10-13 (noting discovery will involve "survey issues"); *id.* 21:16-18 ("I suspect, Mr. Keller, that you could take a sufficiently informal, but sufficiently meaningful, survey of consumer reaction . . . .")).  Finally, the few additional documents that Gap voluntarily provided in October 2010 did not expand the record, but were subsequent documents and/or filings to those already in the record. [5]

## II.    G.A.P. Has Not Demonstrated "Good Cause" To Reopen Discovery.

Rule 16(b) scheduling orders "offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (internal citations and quotation marks omitted).  For that reason, "[a] schedule set under Rule 16(b) may be

---

[5]    For example, Gap updated (a) annual reports for 2008 (GAP026225-318) and 2009 (GAP026319-418), having already produced annual reports for 1990 through 2007; (b) Interbrand "Best Global Brands" reports for 2008 through 2010 (GAP026115-224), having already produced similar "top brand" reports for 2002 though 2007 as well as 1998 and 1999; and (c) documents from the Patent and Trademark Office (GAP026419-786).  The Declaration of Dr. Eli Seggev was in direct response to a line of questioning at Dr. Ford's August 26, 2010 deposition when it became clear that G.A.P.'s counsel had misunderstood Dr. Seggev's testimony in another case.

modified only for good cause," Fed. R. Civ. P. 16(b)(4), which G.A.P. "bears the burden of establishing." *Thieriot v. Jaspan Schlesinger Hoffman, LLP*, 2010 WL 4038765, at * 6 (E.D.N.Y. Sept. 30, 2010). "A party's assertion that further discovery is needed, without more, will not suffice" to establish good cause. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 1522.2 (2010). Instead, "[a] finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).

As a general matter, a party seeking to reopen discovery must show why the court's deadlines could not "reasonably" have been met "despite the party's diligence." 6A WRIGHT & MILLER § 1522.2. When it comes to belated requests that seek to reopen discovery long after it has closed, some courts apply an even higher standard. They require that the moving party show that it would have been "***impossible***" to meet the prior deadline. *Gotlin v. Lederman*, 2007 WL 1429431, at *3 (E.D.N.Y. May 7, 2007); *Gavenda v. Orleans County*, 1996 WL 377091, at *2 (W.D.N.Y. June 19, 1996).

### A.     G.A.P. Had "Ample Opportunity" To Conduct Its Recent Discovery Before The Discovery Deadline.

G.A.P. has no "good cause." There is no reason why, especially in light of all the discovery it actually took on the issue, its investigation of third party uses could not have been completed by the discovery deadline set by the court. *King v. Friend of Farmer, Inc.*, 2000 WL 290355, at *1 (S.D.N.Y. Mar. 21, 2000) (absent "some explanation" for the party's delay, court should decline an application to reopen).

G.A.P. actually pursued, extensively, third-party uses during discovery.[6]

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985) (affirming denial of further discovery when party had "ample time in which to pursue the discovery that it now claims is essential"); *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001) ("Discovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery."). The vast majority of the information G.A.P. now wants to use at trial was contained in the Corsearch Report G.A.P. had as far back as 2007. Nothing prevented G.A.P. at that time, well within the discovery deadline set by the Court, from retaining private investigators to scour the country in search of the commercially insignificant uses of the word "gap" it now wants to use at trial. *Yrityspankki Skop Oyj v. Delta Funding Corp.*, 1999 WL 1018048, at *4 (S.D.N.Y. Nov. 9, 1999) (denying request to reopen where party was aware of information in question and "could . . . have developed information during discovery"); *Katel*, 2009 WL 773498, at *1 (declining to reopen discovery when party "could have asserted its [new] claim long before now").

G.A.P.'s actual use of the 2007 Corsearch report means its request boils down to a "do over." It wants to revisit strategic decisions made by former counsel as to how extensively to use that 2007 report. Razzano Decl. ¶ 9 (prior counsel "appears to have used the 2007 [Corsearch Report] to identify some third party users of marks including the word 'gap'" and depose them).

---

[6]    In fact, Gap did not object when G.A.P. scheduled some of that discovery to take place *after* the close of discovery. *See* p. 4, *supra.*

That does not satisfy the good cause standard.  "[T]hat the plaintiff terminated his attorney and is dissatisfied with counsel's discovery efforts is not sufficient grounds for the court to reopen discovery in a case that is otherwise trial-ready."  *Alston v. Cahill*, 2008 WL 5120735, at *1 (D. Conn. Dec. 5, 2008); *see also Scott v. City of New York Dep't of Corr.*, 2007 WL 4178405, at * 8 (S.D.N.Y. Nov. 26, 2007) ("[T]he failure to take discovery by plaintiff's first attorney does not justify reopening discovery."); *Gotlin*, 2007 WL 1429431, at *3 (Rule 16 "authorizes modification of discovery deadlines only upon a showing of good cause and not for inadvertent neglect" of counsel); *Hussain v. Nicholson*, 435 F.3d 359, 363-64 (D.C. Cir. 2006) (dissatisfaction with prior counsel's conduct of discovery not "good cause" to extend Rule 16 deadline); *Paone v. Oberholtzer*, 2007 WL 2973587, at * 1 (N.D.N.Y. Oct. 9, 2007) (declining to reopen discovery; "failures of . . . prior counsel" not good cause).

### B.   Reopening Discovery To Admit Cumulative Third-Party Use Evidence Would Prejudice Gap And Disrupt The Trial.

In addition to the diligence analysis, courts consider:  (1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence. *Bakalar v. Vavra*, ___ F. Supp. 2d ___, 2011 WL 165407, at *4 (S.D.N.Y. Jan. 14, 2011); *Jeannite v. City of New York Dep't of Buildings*, 2010 WL 2542050, at * 2 (S.D.N.Y. June 21, 2010).  Every one of these factors weighs against G.A.P.:

*(1) Imminence.*  The trial date is "imminent."  It is set for May 9, 2011.

*(2) & (3) Opposition & Prejudice*. Gap opposes the request because reopening discovery to permit an unspecified number of private investigators and two paralegals to testify about "what they did and what they saw," Razzano Decl. ¶ 28, would be highly prejudicial. It means, at a minimum, the May date cannot hold. *See Paone*, 2007 WL 2973587, at * 4 (reopening discovery "two years" after "the discovery deadline expired" and when "the case is trial ready . . . would be very prejudicial to Plaintiff"). G.A.P. itself admits collecting evidence of third party use was "an extensive and expensive project" which took weeks or months to complete. Razzano Decl. ¶ 21. Gap would need to spend at least as much time and money to (1) depose G.A.P.'s private investigators and (2) collect its own proof on the *de minimis* extent and nature of each use. *See Gotlin*, 2007 WL 1429431, at *3 n.2 ("[D]efendants obviously would be prejudiced in having to conduct ten months of discovery in sixty to ninety days."); *In re September 11 Litig*., 621 F. Supp. 2d 131, 149 (S.D.N.Y. 2009) (Hellerstein, J.) (excluding evidence that would "add to the trial substantial expense and delay").

*(4) Foreseeability.* G.A.P. actually did foresee the need for this discovery years ago, when it developed its record on third party uses. There is no "new" development, unforeseen at the close of discovery, that would warrant setting aside the Court's discovery deadline. *See McKay v. Triborough Bridge and Tunnel Auth.*, 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007) (declining to reopen discovery under "good cause" standard where party did not "contend that any new information has come to light").

*(5) Relevance.*  Most importantly, as this Court has twice indicated, the type of evidence G.A.P. seeks to introduce does not show how consumers perceive the third party uses and proves nothing about the strength of Gap's trademark rights.  Its evidentiary value is, therefore, minimal compared to the need to conduct what amounts to a trial within a trial.  *See Lidle v. Cirrus Design Corp.*, 2010 WL 4751580, at * 2 (S.D.N.Y. Nov. 18, 2010) ("[T]he interest of the parties . . . in bringing this matter to trial outweighs the . . . desire of plaintiffs to explore every potentially relevant source of evidence."); *cf. U.S. v. Schatzl*e, 901 F.2d 252, 256 (2d Cir. 1990) (court was well within its discretion in concluding that potential delay from allowing "mini-trial" on collateral issue outweighed any probative value); *see also Stathos v. Bowden*, 728 F.2d 15, 18-19 (1st Cir. 1984) (affirming trial court's exclusion of studies because they were tangential to the case and would have wasted judicial resources).

In a trademark case, the significance of third-party uses "depends *wholly* upon their usage."  *Scarves by Vera*, 544 F.2d at 1173 (emphasis added).  This is true of both infringement and dilution claims; courts apply the same marketplace-driven analysis to determine the effect of third-party uses in both infringement cases, where strength of the plaintiff's mark is one of the *Polaroid* factors for determining likelihood of confusion, *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir. 1987), or the fame of the plaintiff's mark for determining likelihood of dilution.  15 U.S.C. § 43(c); *Trs. of Columbia Univ. v. Columbia Healthcare Corp.*, 964 F. Supp. 733, 749 (S.D.N.Y. 1997) ("The determination whether a mark is famous and distinctive under Section 43(c) is similar to the analysis for strength of the mark for trademark infringement purposes.").

G.A.P.'s evidence does not tell the court anything about the actual marketplace use or impact of those other businesses.  It consists of state-issued business certificates, web site printouts and photos of storefronts.  *Soil Solutions, Inc. v. Soil Solution Indus., Inc.*, 2009 WL 3753912, at * 4 (E.D.N.Y. Nov. 6, 2009) (Weinstein, J.) (list of company names "is not evidence of what happens in the marketplace or that customers are familiar with their use").  This evidence shows, if anything, only local and limited use by businesses having nothing to do with Gap's.  *See*, *e.g.*, Keller Decl. Ex. 6.  Without showing that these marks are "actually used by third parties, that they were well promoted [and] that they were recognized by consumers," *Scarves by Vera*, 544 F.2d at 1173, G.A.P.'s evidence is "***incompetent***."  *Lexington Mgmt. Corp.*, 10 F. Supp. 2d at 283 (emphasis added).

The cases G.A.P. cites about the supposed importance of third party uses all involve third-party marks ***in the same field*** as plaintiff's products or services.  *See, e.g., Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) (other map companies using "street"); *Lang v. Retirement Living Publ'g*, 949 F.2d 576, 581 (2d Cir. 1991) ("third party use" in same field; no discussion of unrelated products); *Western Publ'g Co., Inc. v. Rose Art Indus., Inc.*, 910 F.2d 57, 61 (2d Cir. 1990), *superseded on other grounds by* Fed. R. Civ. P. 52(a), *as recognized in Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584-85 (2d Cir. 1993) (related fields); *Nabisco v. Warner Lambert Co.*, 32 F. Supp. 2d 690, 698-99 (SD.N.Y. 1999) (related products); *Essence Commc'ns, Inc. v. Singh Indus., Inc.*, 703 F. Supp. 261, 266 (S.D.N.Y. 1988) (same field

(jewelry)); *Kinark Corp. v. Camelot*, 548 F. Supp. 429, 437 (D.N.J. 1982) (related services).

That is not the case here, where G.A.P.'s co-founders, former marketing director and expert concede the fame and strength of Gap.  Keller Decl. Ex. 9 (Voth Tr. 29:24-30:8) (co-founders acknowledged to each other:  Gap "is a famous company"); *id.* Ex. 10 (Serafini Tr. 14:9-12)[7] (former marketing director "would consider GAP to be a famous brand"); *id.* Ex. 11 (Wind Tr. 39:10-22) (G.A.P. expert:  "GAP is famous").  Their testimony is consistent with well-settled law:  Use "of a like mark in a different market for different products or services need not undermine the mark's strength in its own market," *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999), particularly when the mark is as famous as Gap's.

G.A.P. also is wrong when it labels this expansion "rebuttal evidence" and suggests that Gap wants it excluded because it somehow provides a defense to G.A.P.'s infringing and diluting conduct.  *See* Def. Br. at 4.  There are three responses to this.

*First*, there is no escaping that it simply is unfair to now place the burden of responding to information that is "incompetent" to prove what G.A.P. wishes it would prove.  As G.A.P.'s counsel has stated in another capacity, post-discovery requests like this should be denied.  *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 166 (S.D.N.Y. 2004) ("To expand discovery now at this late date – after close of fact

---

[7]     Mr. Serafini's deposition transcript is designated "Confidential:  Attorney's Eyes Only."  Pursuant to this Court's Individual Rule 4.B., however, the parties conferred and cooperatively stipulated that the information in this memorandum and Exhibit 10 to the Keller Declaration may be filed publicly.

discovery – would create a whole new wave of . . . depositions, expert testimony, document production, discovery disputes, etc.") (quoting Special Master Pasquale A. Razzano).

*Second*, this belated evidence is not "rebuttal," and it would not matter if it were. "[B]y the close of discovery, *all* discovery must be completed, including the opposing party's attempt to discover rebuttal evidence." *Warfield v. City of Chicago*, 565 F. Supp. 2d 948, 959-60 (N.D. Ill. 2008) (emphasis in original).  Moreover, G.A.P. pleaded affirmative defenses that purport to make third-party use relevant, including acquiescence and estoppel.  *See* Answer (3rd, 8th, 9th Affirmative Defenses).  That is why Gap specifically asked that G.A.P. produce all those it claims are "relevant to the parties' claims and defenses in this litigation."  Keller Decl. Ex. 1 (Plaintiff's First Request for Production of Documents and Things, Request No. 26).  These requests meant G.A.P. was obligated to produce responsive documents by the discovery deadline, if not well before it.  *See Bakalar*, 2011 WL 165407, at *4 (denying motion to reopen discovery on laches defense when party "failed to exercise diligence" during discovery period).

Moreover, it simply is not "rebuttal" evidence.  G.A.P. is wrong to claim (without any citation to authority) that Gap has the burden of proving commercial strength "outside its field of use," Def. Br. 1, which is what G.A.P. claims this evidence is needed to rebut.  Def. Br. 3.  Gap's actual burden is to prove that G.A.P.'s mark "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(1).  The conceptual and commercial strength of Gap is one factor in that analysis; whether Gap

16

will "bridge the gap" is another, entirely separate one. *See Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) ("bridging the gap" is one of eight, non-exclusive likelihood of confusion factors); *McGregor-Doniger Inc. v. Drizzle Inc*., 599 F.2d 1126, 1136 (2d Cir. 1979) ("[S]ufficient likelihood of confusion may be established although likelihood of bridging the gap is not demonstrated."), *superseded on other grounds by* Fed. R. Civ. P. 52(a), *as recognized in Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir. 1992).

*Third*, in contrast to *Estee Lauder Inc. v. Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997), where third party uses were used to back up "Lauder's concession that prospective purchasers did not associate [the proposed trademark, "100%"] with Lauder," *id.* at 1511, here, G.A.P.'s own witnesses concede that Gap is a famous mark, Keller Decl. Exs. 9-11, notwithstanding any third party use.

## CONCLUSION

For the foregoing reasons, G.A.P. Adventures' motion should be denied.

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP


By:   /s/ Bruce P. Keller
      Bruce P. Keller
      Michael R. Potenza
      Camille Calman
919 Third Avenue
New York, New York  10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836

Attorneys for Plaintiffs