**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                :

THE GAP, INC. and GAP (APPAREL) LLC, :
                                :

          Plaintiffs,       :

                                :

      -against -        :       07 Civ. 9614 (AKH)

                                :

G.A.P ADVENTURES INC.,
                                :

          Defendant.     :       *Filed via ECF*

                                :
---------------------------------------------------------x

**DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO INTRODUCTION OF EVIDENCE AT TRIAL PRODUCED PURSUANT TO
<u>FED. R. CIV. P. 26(e) OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY</u>**

FITZPATRICK, CELLA, HARPER
   & SCINTO

Pasquale A. Razzano (7340)
prazzano@fchs.com
Timothy J. Kelly (8241)
tkelly@fchs.com

1290 Avenue of the Americas
New York, NY 10104
212/218-2100 (phone)
212-218-2200 (fax)
*Attorneys for Defendant*
*G.A.P Adventures Inc.*

Dated:  February 11, 2011

## **Preliminary Statement**

Plaintiffs' Memorandum In Opposition to G.A.P Adventures pending motion "blurs" the factual issues for which the evidence sought to be presented is relevant in a flurry of quotes from cases which address different issues.  That memorandum does however concede Plaintiffs have been in possession of the original Corsearch report commissioned by Mr. Sack since November 2007  (Plaintiffs' Memo p. 1) and that the "vast majority of the information G.A.P now wants to use was contained in" that report (Memo p. 10).  Plaintiffs also concede that from at least that time Plaintiffs were aware that the use of the term "gap", as a business name or trademark by third parties, was an issue in this case.

The 2007 Corsearch report contained "most of" the names and identities of the third party users and the trademark registrations and applications referred to in the more recently produced public documents.  (Memo p. 3).  Based on the listing of the third party entities, trademark registrations and applications (and the information about them provided) in that report, Plaintiffs also knew that there were records in state governmental offices, as well as in the United States Patent and Trademark Office, which were publicly available and could be located and collected. Defendant here did little more than collect those records.

Plaintiffs' Memorandum also "blurs" the intended purpose of those records by ignoring their burden of proof under their claims in the very different factual context of this case. Plaintiffs have two main claims:  1) that G.A.P Adventure's use of the word, acronym or letters "G" "A" "P" in connection with travel services is likely to cause confusion and, hence, infringes their mark "GAP" which is used on very different products (clothes) or services (clothing stores); and 2) that G.A.P Adventures dilutes Plaintiffs' mark GAP by "blurring".  Plaintiffs further ignore the fact that the parties' goods or services are very different, that Plaintiffs have the burden of proving strength in their mark in areas <u>not</u> encompassed by their registrations, and that they have the burden of proving "substantially exclusive use" of their mark (an issue Plaintiffs never mention) in order to prove dilution by blurring.  Finally, they totally ignore the fact that the documents and things Defendant, by the pending motion, seeks to use at trial had been "otherwise made known to [Plaintiffs] during the discovery process" by reason of the 2007 Corsearch report.

## ARGUMENT

### I.    The Fed. R. Civ. P. 26(a) Requirement

A party must supplement or correct its initial disclosures or responses to requests for production if it learns that in some material respect its disclosure or response is incomplete or incorrect, "<u>and</u> if the additional or corrective information has not otherwise been made known to the other parties during the discovery process ...".

As noted in G.A.P Adventure's opening brief, based on the materials transferred to counsel in 2010 it was unclear to Defendant's new counsel whether the 2007 Corsearch report was produced in discovery.  Given Plaintiffs' courteous acknowledgement, it is now clear that the 2007 Corsearch report was produced during discovery in  response to Plaintiffs' Document Request No. 26 (Plaintiffs' Memo, p. 2) which asked for "[d]ocuments sufficient to identify any corporate name,  trade name, trademark  . . . registration or application to register any corporate name  . . . trademark or service mark  . . . owned by a third party".  The 2007 Corsearch report did just that.[1]  Accordingly, Plaintiffs have known since 2007 the identities and locations of the hundreds of trademark applications and registrations for marks using the word "gap" in the public records of the Patent and Trademark Office and they also knew, from the report, that there were hundreds of state records showing that corporations and businesses were registered throughout the country using business names including the word "gap".  Under those circumstances the existence of the "additional" public records provided by Defendant which are at issue here had "otherwise been made known to" Plaintiffs in the discovery process.  Therefore, no supplementation under Rule 26 was required.  Defendant merely produced copies of the public records which were made known in the 2007 Corsearch report that it intended to rely on once those records were retrieved from the various governmental agencies involved.[2]  None of this collection of documents involved "discovery" processes under the Federal Rules and the

---

[1]  Request No. 26 did not encompass the public records themselves, or photographs of such third party establishments.

[2]  To the extent the 2010 updated Corsearch report included updated information concerning company identities or trademark applications or registrations, it, and the documents derived therefrom, have the same status as the "Gap updated" documents Plaintiffs produced after the close of discovery (Memo, p. 8, fn. 5).  They should no more be precluded than Gap's own updated documents.

witnesses to be called about those documents (two paralegals and a private investigator) are simply for authentication, although the authenticity of the documents should not be in dispute.

## II.     No Cases Cited By Plaintiffs Barred The Use Of Publicly Available Records Whose Existence Had Been Made Known To The Other Side

The comments to the 1970 Amendment of Fed. R. Civ. P. 26, adding new Rule 26(e), note that "[m]any of the decisions on the issue of a continuing burden have in fact concerned the identity of witnesses", with a special provision for experts.  As noted at page 9 of Defendant's opening brief no case was found by Defendant relating to reopening discovery or supplementing discovery specifically with respect to the production or use of public documents and the authentication thereof, much less one involving physical production of known public records whose existence was disclosed during discovery.  Evidently Plaintiffs could not find such a case either.

Although Plaintiffs' brief is replete with cherry-picked quotes from numerous cases around the country none addresses the same facts as presented to this Court.  *Reid v. Lockheed*, (Memo p. 6) involved the production of a supplemental expert report after the Court ordered deadline to produce them and after the expert said he planned no further reports; *Beller ex rel. Beller vs. U.S.*, (Memo p. 6) did not involve merely "new information" as Plaintiff's cropped quote suggests, it involved supplemental expert reports "with claims and issues which should have been included in the expert witness report …" 221 F.R.D. at 701.  *Gallagher v. Source Packaging LLC*, (Memo p. 6), involved a supplemental expert report submitted in opposition to a summary judgment motion.  *Katel L.L.C. v. AT&T Corp.*, (Memo p. 6) involved the submission of a supplemental expert report that presented new theories.  *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, (Memo p. 6) likewise involved a supplemental expert report which raised new issues.  *Hewlitt Packard v. Factory Mut. Ins. Co.*, (Memo p. 6) involved a revised damages expert report wherein, despite the quotation relied on by Plaintiff, the Court noted that the "preclusion sanction is a matter within the trial court's discretion … and preclusion of evidence is generally a disfavored action." *Id.* 2006 WL 1788946 at *15.  Moreover, the court allowed the report in evidence as the prejudice caused could be alleviated by modest additional discovery, *Id.*

at * 18. *Goodby's Creek LLC v. Arch Ins. Co.*, (Memo pp. 6-7) is yet another case involving expert reports raising new or different issues. *Ventra v. U.S.*, (Memo p. 7) involved a new expert witness and new issues. In the criminal case of *Warfield v. City of Chicago*, (Memo p. 16) the defendant sought to present a new expert on DNA evidence which was not produced during discovery. None of these cases involved public information and documents whose existence was identified in a document produced during discovery.

Plaintiffs also argue (Memo p. 8) that G.A.P Adventures had not demonstrated "good cause" to reopen discovery and that Defendant had ample time to collect this evidence before the discovery deadline (Memo p. 9), ignoring the fact that the information about these third parties and documents "sufficient to identify" them was produced during discovery. The cases they rely on for this argument also do not relate to the use of public documents the other party knew existed from documents produced in the discovery period.

### A.   <u>Good Cause</u>

*Parker v. Columbia Pictures, Indus.*, (Memo p. 8) involved a motion to amend the complaint after a motion for summary judgment was made. *Thierot v. Jaspan Schlesinger Hoffman LLP*, (Memo p.8) involved the reopening of discovery to locate a material fact witness who had firsthand knowledge of the underlying transaction; the motion to reopen was granted and the movant allowed to retain an investigator to locate the witness. *Grochowski v. Phoenix Constr.*, (Memo p. 9) involved a motion to amend the Complaint after a motion for summary judgment was filed. In *Gotlin v. Lederman*, (Memo p. 9) the movant provided <u>no</u> discovery during the discovery period; and in *Gavenda v. Orleans County*, the movant sought to get discovery <u>from the other side</u> which it failed to get during the discovery period.

In this case G.A.P Adventures is not seeking discovery from anyone, or on any new issue. Nor does it, or will it, seek to introduce documents about any company Plaintiffs were not aware of from the 2007 Corsearch report or the updated report and documents based thereon. The "good cause" for allowing such evidence is that Plaintiffs knew of these companies' trademark registrations and applications and knew that the information contained in that 2007 report came from publicly available records. As discussed below this evidence goes to key issues in this case, which Plaintiffs were aware of since 2007 as well, i.e., whether Plaintiffs can

- 4 -

enforce their mark under "confusion" theories against a service so different than Plaintiffs provide or whether they can enforce their mark under "dilution" theories when they cannot carry their burden of showing exclusive use.

**B.     "Ample Opportunity"**

Because the information about the third parties and third party documents were known to Plaintiffs in 2007 and all of the public documents and places of business were equally accessible to both, we submit that not only was no supplementation required, as discussed above, there was no need to incur the expenses of collecting this public evidence until a time closer to trial.  Here again Plaintiffs' "Ample Opportunity" cases do not address this issue.[3]

*King v. Friend of Farmer, Inc.* (Memo p. 9) involved reopening discovery in order to seek further expert discovery. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.* (Memo p. 10) involved a request to take the deposition of Defendant's officers and of third parties which could have been taken sooner and which related to information that apparently could not be obtained in any other way. *Harris v. Computer Assocs. Int'l Inc.*, (Memo p. 10) involved a request to take the deposition of Defendant's CEO, which could have been done in the discovery period.  In *Gotlin v. Lederman* (Memo p. 11), as noted above, no discovery was provided by movant during the discovery period. *Katel L.L.C. v. AT&T Corp.,* also discussed above, related to a supplemental expert report which raised new issues.

Plaintiffs also rely on several cases relating to alleged failures of prior counsel, *i.e.*, *Alston v. Cahill*; S*cott v. City of New York Dep't of Corr.*, *Hussan v. Nicholson*, *Poone v. Oberholtzer* (Memo p. 11).  G.A.P Adventures here does not base the pending motion on any alleged "failure" or "neglect" of any prior counsel.  Prior counsel commissioned the Corsearch report and produced it.  That search contains the "vast majority of the information" (Plaintiffs' Memo p. 10) used to locate the third parties' facilities and their public filings.  Collecting the documents did not and does not require discovery.  Those documents and the people that

_____

[3]  With regard to Plaintiffs' comments (Memo p. 12), that Defendant's research was extensive and expensive, that was because Defendant had to investigate scores of corporate and business name documents, and then visit the sites to confirm these businesses existed and were operating.  That is all the private investigators would testify about.  Plaintiffs now have all the information and would not have to incur that time and expense.

collected them were identified shortly after the documents were received and neither the documents nor testimony authenticating them should be precluded.

*Yrityspankki Skop Oyj v. Delta Funding Corp.,* cited by Plaintiffs (Memo p. 10) is, however, instructive for the facts in this case. In *Yrityspankki* the Defendant sought to reopen discovery to conduct four new depositions. Defendant asserted that Plaintiff had waived the attorney client privilege in a declaration of its in-house counsel relating to positions Plaintiff had taken in an earlier case. The Court noted that the Defendant could have developed the information sought from in-house counsel during discovery "simply from a perusal of the legal papers" filed in the other case. Although denying the request to take the depositions, the Court said "there is no current obstacle to [Defendant] offering evidence—if it exists . . . contrary to [in-house counsel's] representation . . . ." *Id.* *4. In other words the Court did not permit the depositions to be taken, but the public records apparently could still be used.

Here the existence of the public records and information were known to Plaintiffs in 2007 and, the documents collected based on the report therefore came from information in the hands of both parties. If those public documents evidence facts that contradict Plaintiffs' proof on issues they have the burden on, G.A.P should be permitted to use them.

## III.    The Reopening Of Discovery Is Not Necessary, But Can Be Rapidly Completed If Plaintiffs Require It

### A.    Imminence and Prejudice

Defendant is not seeking discovery from anyone. If further "discovery" is required it would be by Plaintiffs not G.A.P Adventures. That discovery would be very limited and quickly resolved in the three months remaining before trial. As noted above the two paralegals simply collected documents as instructed. They can only relate what they were instructed to do and how they did it. The private investigators include Frank Kelly who collected the state incorporation records and visited a few sites. All he could or would testify about is what he was asked to do and what he collected. The other investigators who visited and photographed various sites (essentially all of which were identified in the 2007 Corsearch report) also can only testify about what they were asked to do, whether the photographs they took were true and accurate and

whether the places they visited were operating when they were there.  G.A.P Adventures would bring these individuals to New York for their brief depositions.

Plaintiffs argue that it would be prejudicial to them to depose these investigators and collect their own proof on the extend and nature of each use.  There is no prejudice from a few brief depositions concerning authentication.  There also is no need for Plaintiffs to collect their own evidence on the extent of such use.  G.A.P Adventures does not intend to produce evidence of the "extent" of use beyond what appears in the documents, because, as discussed below, that is not necessary for the purposes of presenting the evidence for the issues it is directed to.  The fact that such businesses exist and are using the names or marks alone is sufficient to make them relevant and competent.

### B.    Foreseeability and Relevance

As to foreseeability, it is correct that G.A.P Adventures knew that third party uses of "gap" was an issue, that is why G.A.P Adventures provided the 2007 Corsearch report, *i.e.*, to alert Plaintiffs to all such users that it was aware of and that there were or would be public records associated with them.  The *McKay* case Plaintiffs rely (Memo p. 12) on is inapposite.  It involved the issuance of a Rule 45 subpoena five months after discovery closed to obtain from the Plaintiff's employer, non-party personnel, disciplinary, training and other files.  The Defendants in that case did not show why they could not have sought the subpoena prior to the close of discovery.  G.A.P Adventures here did not issue a subpoena or any other form of discovery demand.  It simply collected public documents known to exist from the Corsearch report.

Plaintiffs' argument (Memo, pp. 13-16) that the evidence sought to be used by this motion is of minimal evidentiary value ignores the facts in this case which differentiate it from those cases they cite.  Indeed Plaintiffs' argument is the common argument of all owners of allegedly well known marks, i.e.: "because my mark is well known no one else can or should use it regardless of the differences in the goods or services and, besides that, if it is 'famous' there automatically is dilution".  That simply is not the law, particularly with respect to Plaintiffs' dilution claims, since the Federal Dilution Act does not create a property right in gross. *Nabisco, Inc. v. PF Brands, Inc.*, 191 F. 3d 208 (2d Cir. 1999).

Plaintiffs' argument begins by asserting that the evidence "proves nothing about the strength of Gap's trademark rights" and that it would lead as a "trial within a trial". However, the issue is not the "strength" of Gap's mark as a general proposition in Plaintiffs' own field of use (as was the case in all but one of the cases Plaintiffs cite). Rather, in the likelihood of confusion context, the issue is whether the mark has strength <u>outside</u> that field of use (e.g., in the travel agency services field) to support a likelihood of confusion, or, in the likelihood of dilution context, whether Plaintiffs can show they are engaging in substantially exclusive use of their alleged mark. These issues are not "tangential" to the case.[4]

While Plaintiffs also argue that the significance of third party uses depends wholly on their usage (Memo, p. 13), in the case they rely on, *Scarves by Vera*, the Court was not considering a case in which the defendant's goods or services were as far removed from Plaintiffs' as they are in this case. Rather, the Court found that the Defendant's goods were "closely related to Plaintiff's own products." Moreover, the cropped quote Plaintiffs rely on did not relate to "third-party uses" as the cropping suggests. The Defendant had submitted <u>only</u> third party registrations, not declarations of use, or declarations of continued use filed as public records in the Trademark Office; and certainly not evidence of actual use. Thus, the court said in the full quote: "The significance of third-party <u>registrations</u> depends wholly upon their usage. Defendant submitted <u>no</u> evidence that these trademarks were actually used by third parties . . .". *Id.* 844 F.2d at 1173. The evidence sought to be introduced here is not only evidence of registrations, but also of use, in the way of public declarations and other evidence of use filed in the Trademark Office.

---

[4]   With respect to Plaintiffs' gratuitous reference to a non-precedential Special Master's Report cited in *Convolve, Inc. v. Compaq Computer Corp.,* 223 F.R.D. 162 (S.D.N.Y. 2004) (Memo, pp. 15-16) it is noted that the discovery being sought after close of discovery in that case was not of public records. That case was a patent infringement action relating to computer control of computer hard disk drives in a highly technical field, indeed on the most complex technology and complex patent encountered by the Special Master in forty years of practicing patent law. Convolve had sued Compaq based on Compaq's use of certain Seagate disk drives and theft of trade secrets. After the close of discovery Convolve sought discovery from Compaq about numerous <u>other third party</u> brands of disk drives Compaq had used but which Convolve never had accused of infringement and for which it then had no basis to allege infringement.

Moreover, the *Scarves by Vera* case was decided in 1976, prior to the advent of computerized searching such as Corsearch or computerized state corporate records. Since then the Second Circuit has held that in the context of closely related goods evidence from a "trademark search" may be used to demonstrate use of the words at issue in names registered by manufacturers of other products, *Streetwise Maps, Inc. v. Van Dam, Inc.,* 159 F.3d 739, 744, which "weakens the strength of Streetwise's mark". Likewise, in *Lang v. Retirement Living Publ'g.,* 949 F. 2d 576, 581 (2d Cir. 1981) the Court held that use of the word at issue ("choices") in third party publications "weighs against a finding that Lang's trade name is strong". That principle used in these and other cases cited in G.A.P Adventure's opening brief, p. 4, (none of which refer to or quantify the "extent" of use, if any, to be proven) applies equally well, if not more so where the parties' goods and services are in materially different fields.[5]

The case of *Trustees of Columbia University v. Columbia/HCA Health Care Corp.,* 964 F. Supp. 733 (S.D.N.Y. 1997), is the one case relied on by Plaintiffs directed to a situation where the parties' services were quite different. It is an apt example of the application of the above principles, in both the likelihood of confusion and dilution contexts. In that case Columbia University owned a registered trademark for its name, that is "well known" if not "famous", for "educational services". The word "Columbia" however, like "gap" here, also had other connotations, e.g., historic and geographic *Id.* p. 739. Defendant Columbia/HCA Health Care provided health care services under that name throughout the country. Columbia University, in a claim similar to that made by GAP here, asserted that its use of "Columbia" alone and in combination with other words and phrases, was entitled to protection in Defendant's field of medical or healthcare services, even though its federal registrations covered only "educational services". The Court, echoing the argument made by G.A.P Adventures at pages 1 and 2 of its opening brief, held, *Id.,* p. 742:

---

[5] *See also, Star Markets, Ltd. v. Texaco, Inc.,* 950 F. Supp. 1030, 1035 (D. Haw. 1996) ("For purposes of determining whether Plaintiff's mark is famous, the court will consider the use of the same or similar marks by third parties in any industry.... The more times 'Star' is used in connection with a variety of goods and services, the less likely Plaintiff's mark could signify something unique, singular or particular." Where the parties were in competition in the retail food market business, the court considered third party uses in all lines of consumer-oriented business.).

The plaintiff is not entitled to a presumption of an exclusive right to use the Columbia mark in connection with medical or healthcare services. According to Section 7(b) of the Lanham Act, a certificate of registration of a trade or service mark issued by the United States Patent and Trademark Office is 'prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate. . . .' 15 U.S.C. § 1057(b). Although the plaintiff has obtained federal service mark protection for the name 'Columbia University' for educational services, 'the presumption of an exclusive right to use a registered mark extends only to the goods and services noted in a registration certificate.' (Citations omitted). . . .

Where a mark is not registered, the plaintiff has the burden of proving that its mark is a valid trademark. (Citations omitted).

The additional public documentation and evidence of use and registration based on the 2007 Corsearch report is submitted for precisely this reason, to rebut Plaintiffs' claim that they have exclusive rights to use the word "gap" in the travel services field where their mark is <u>not</u> registered.

In *Columbia*, the Court went on to state, *Id.* p. 744:

[A]lthough the plaintiff's Columbia mark, used alone and in combination with other phrases, is arbitrary and therefore 'among the strongest and most highly protected class of trademarks,' (citation omitted) it does not signify an exclusive source of medical or healthcare services. The Court of Appeals for the Second Circuit has explained:

[A]lthough denominating a mark 'arbitrary' can be useful in focusing the inquiry, the strength of a mark 'depends ultimately on its distinctiveness, or its origin-indicating' quality, in the eyes of the purchasing public.' Just as an invented, even bizarre term can lose a measure of trademark protection if it has 'become merely descriptive of the product,' so too can the distinctiveness of an arbitrary mark be diluted by third party use. *Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 256 (2d Cir. 1982) (citations omitted)....

In this case, third party use <u>and registrations</u> of the name Columbia, including in the healthcare field, have diluted the strength of the Columbia mark. [Emphasis added.]

Accordingly the Court found no likelihood of confusion.

With regard to Plaintiffs' trademark dilution claim, they cite (Memo, p. 13) the *Columbia* case for the proposition that the determination of whether a mark is famous and distinctive is

- 10 -

similar to the analysis for strength of the mark for trademark infringement purposes. However, the dilution statute that existed in 1997 when the *Columbia* case was decided has been changed by Amendment in 2006. The current statute makes it clear that for a mark to be protectable the mark must be both famous <u>and</u> distinctive.[6] Therefore, whether the *Columbia* Court's statement remains applicable is open to debate. Regardless, what is not open to debate is that in the 2006 Amendment Congress provided a list of relevant factors to be considered under a dilution by "blurring" claim. One of those factors is

> "the extent to which the owner of the famous mark is engaging in exclusive use of the mark." 15 U.S.C. ¶ 1125(c)(B)(iii).

That is Plaintiffs' burden of proof under the statute. The documentation sought to be used at trial on this motion is relevant to rebut Plaintiffs' assertion of exclusive use.

In considering a similar factor under the 1996 Act, i.e., "the nature and extent of use of the same or similar marks by third parties", the *Columbia* Court held:

> any acquired distinctiveness of the plaintiff's mark in connection with medical or health care services has been seriously undermined by third party use of the same or similar marks . . . . Plaintiff has failed to prove that the Columbia mark is a <u>unique</u> identifier of the plaintiff's service such that the defendant's use of its mark undermines the identifying character of the plaintiff's mark. *Id.,* p. 750. [Emphasis added.]

That evidence included:

> Third party <u>use and registrations</u> of the name Columbia, including in the healthcare field, [which] have diluted the strength of the Columbia mark. *Id.,* pp. 744-745. [Emphasis added.]

Accordingly, the evidence at issue here is directly relevant to the issues in this case and is not tangential or incompetent, particularly where G.A.P Adventures' use is so far afield from Plaintiffs'.[7]

---

[6] Whether or not any G.A.P Adventures' witness conceded the Plaintiffs' mark is famous, in their non-legal opinion, is irrelevant to this issue. The mark may have "fame" in Plaintiffs' line of business, but that <u>alone</u> does not qualify it for dilution protection. AMERICAN may be famous in the airline business and FORD famous in the auto industry, but like here, there are many third party uses of those marks in other lines of goods and services (American Express, American Football Conference, Ford Models, etc.).

[7] The premise of the law of "dilution" is protection against a "gradual whittling away" of distinctiveness by third party users, *Allied Maintenance Corp. v. Allied Mechanical Trades*, 42 N.Y. 2d 538; as analogous to diluting a beverage with drops of water, *R.J. Corr Naturals, Inc. v. Coca Cola Co.,* 1997 WL 223058 (N.D. Ill. 1997), or a proliferation of uses by third parties over time that will weaken the

On the issue of the "bridging the gap" *Polaroid* factor, Plaintiffs cite the *McGregor-Doniger* case for the proposition that likelihood of confusion can be proven without proof that the Plaintiff will "bridge the gap". Plaintiffs' citation is misleading. In that case the issue was whether Defendant's use of the mark DRIZZLE on women's coats infringed McGregor's mark DRIZZLER on golf jackets. In considering the "bridging the gap" factor the Court held that since McGregor also sold women's clothing, albeit not under the DRIZZLER mark, there was no need to decide whether there is a substantial likelihood that McGregor would use its DRIZZLER mark on women's coats. To correct Plaintiffs' cropped quote, what the Court said was, *Id.* p. 136:

> In a given case, sufficient likelihood of confusion may be established although likelihood of bridging the gap is not demonstrated. (Emphasis added)

The Court explained that "given case" by reference to the *Scarves by Vera* case, which found that where consumers knew that other name designers marketed women's perfumes under the same mark as women's apparel there was no need to decide where the Plaintiff would enter the cosmetics and fragrances market.

Defendant submits that in a case like this where Plaintiffs' products are clothing and Defendant's are travel services, "bridging the gap" is an issue and the fact that there are hundreds of users of the word "gap" in business names that sell clothing and a plethora of other goods and services is relevant to the issue of whether Plaintiff will "bridge the gap" and whether there would be confusion.

Finally, with regard to the *Estee Lauder* case, Lauder contended, and the District Court ultimately found, that its proposed mark was suggestive and that therefore did not have to have secondary meaning, i.e., consumers did not have to associate that term with Lauder. The Court of Appeals relied on "70 trademark applications, pending applications for registration, or renewal, or publications for opposition" (without any reference to the actual use or extent of use

---

Plaintiff's mark on a case by case basis by a succession of small local users. *See, Nabisco Brands, Inc. v. PF Brands, Inc., Id.; Illinois High School Ass'n. v. GTE Vantage, Inc.,* 99 F. 3d 244 (7th Cir. 1996). If that indeed is the case, as trademark owners like Plaintiffs suggest, then evidence that such "dilution" - or whittling away has occurred, whether from hundreds of small local companies or otherwise, is clearly relevant. Trademark owners cannot have it both ways by saying on the one hand such third party uses are harmful but, on the other, not relevant to whether their mark is already "diluted".

of those marks) to find that the District Court's ruling that Lauder's mark was "moderately strong" was "clearly erroneous".  It is precisely these kinds of documents - which Plaintiffs have known of since 2007 - that Defendant seeks to use here to show that Plaintiffs' mark, whether famous for clothing or not, is not "strong" enough to extend to travel services.

## CONCLUSION

For the foregoing reasons Defendant's rebuttal evidence at issue in this motion should not be precluded from evidence.

Respectfully Submitted,

Dated:  February 11, 2011

FITZPATRICK, CELLA, HARPER & SCINTO

Pasquale A. Razzano (7340)
prazzano@fchs.com
Timothy J. Kelly (8241)
tkelly@fchs.com
1290 Avenue of the Americas
New York, NY 10104
212/218-2100 (phone)
212-218-2200 (fax)

*Attorneys for Defendant*
*G.A.P Adventures Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of February 2011, the foregoing DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO INTRODUCTION OF EVIDENCE AT TRIAL PRODUCED PURSUANT TO FED. R. CIV. P. 26(e) OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY was served upon the attorney(s) of record for THE GAP, INC. and GAP (APPAREL) LLC, by first class mail and email at the addresses set forth below:

> Bruce P. Keller, Esq.
> bpkeller@debevoise.com
> Debevoise & Plimpton LLP
> 919 Third Avenue
> New York, NY 10022

Pasquale A. Razzano