UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
THE GAP, INC. and GAP (APPAREL) LLC,  :
: 07 Civ. 9614 (AKH)
Plaintiffs, :
: ECF CASE
:
-against- :
:
G.A.P. ADVENTURES INC., :
:
Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FILED ELECTRONICALLY

# MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE, OR ALTERNATIVELY ON WEIGHT AND ADMISSIBILITY AT TRIAL OF, DR. YORAM WIND'S EXPERT TESTIMONY

Bruce P. Keller
bpkeller@debevoise.com
Michael Potenza
mpotenza@debevoise.com
Camille Calman
ccalman@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Attorneys for Plaintiffs The Gap Inc. and Gap (Apparel), LLC*

Dated: New York, New York
       April 27, 2011

**TABLE OF AUTHORITIES**

**CASES**

*Am. Footwear Corp. v. Gen. Footwear Co. Ltd.*, 609 F.2d 655 (2d Cir. 1979) ................10

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ........................12

*Barna v. United States*, No. 95 C 6552, 1997 WL 417847 (N.D. Ill. Jul. 28, 1997).........11

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996).......................................14

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384
    (D.N.J. 2009)................................................................................................................12

*Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2009 WL 1759575 (N.D. Ill. June
    22, 2009) .......................................................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).........................................1, 14

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995)................................14

*Fantastic Graphics Inc. v. Hutchinson*, No. 09-CV-2514 (LDW) (ETB), 2010 WL
    475309, at *1-*2 (E.D.N.Y. Feb. 8, 2010) ...................................................................2

*First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D., SPC, Inc.*, 655 F. Supp.
    2d 979 (D.S.D. 2009) ...................................................................................................9

*Gen. Elec.Co. v. Joiner*, 522 U.S. 136 (1997) ...........................................................12, 14

*Gov't Emps. Ins. Co. v. Google, Inc.*, No. 1:04CV507, 2005 WL 1903128 (E.D.
    Va. Aug. 8, 2005)..........................................................................................................9

*Greenpoint Fin. Corp. v. Sperry & Hutchinson Co., Inc.*, 116 F. Supp. 2d 405
    (S.D.N.Y. 2000) ..........................................................................................................10

*Heller v. Shaw Indus., Inc.,* 167 F.3d 146 (3d Cir.1999)...................................................12

*Johnson & Johnson v. Actavis Group HF*, No. 06 Civ. 8209 (DLC), 2008 WL
    228061 (S.D.N.Y. Jan. 25, 2008).................................................................................13

*Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436 (7th Cir. 1997) .....................5

*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06 Civ. 550 (JFK),
  2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007)................................................................10

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007).........11, 12, 13

*M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d 91
  (E.D.N.Y. 2003)..........................................................................................................13

*Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02 Civ. 3691 (DLC),
  2004 WL 326708 (S.D.N.Y. Feb. 23, 2004)................................................................11

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 522 F. Supp. 2d
  569, 571 (S.D.N.Y. 2007) ............................................................................................2

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005)..................................................12

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ........................................................4

*Patsy's Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483 (E.D.N.Y. 2008) ................13, 14

*Procter & Gamble Pharm., Inc. v. Hoffmann-La Roche Inc.*, No. 06 Civ. 0034
  (PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) ...............................................2, 11

*THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218 (S.D.N.Y. 2010) ....................................2

*Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291 (S.D.N.Y. 2001)................................10, 14

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266
  (S.D.N.Y. 2006) ..................................................................................................7, 8, 9

*U.S. E.E.O.C. v. Rockwell Int'l Corp.*, 60 F. Supp. 2d 791 (N.D. Ill. 1999) .....................11

*WE Media Inc. v. Gen. Elec. Co.*, 218 F. Supp. 2d 463 (S.D.N.Y. 2002) .........................10


**STATUTES, RULES & REGULATIONS**

FED. R. EVID. 702...............................................................................9, 10, 11, 12, 14


**SECONDARY AUTHORITIES**

3 ANNE GILSON LALONDE, GILSON ON TRADEMARKS § 8.13 (2001) ................................12

2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION § 11:87 (4th ed. 2010) ................................................................................6

2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION § 15:6 (4th ed. 2010) ..............................................................................6, 7

6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION § 32:187 (4th ed. 2011) ............................................................................5

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 25 cmt. e (1995) ................................6

21 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE
    AND PROCEDURE: FEDERAL RULES OF EVIDENCE § 5037.10 (2d ed. 2005) ..................4

Shari Seidman Diamond, *Reference Guide on Survey Research*, *in* REFERENCE
    MANUAL ON SCIENTIFIC EVIDENCE 229 (2d ed. 2000) ......................................3, 5, 6, 13

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..................................................................................................................4

I.    **Excluding Dr. Wind's Opinions Would Save Significant Time And Judicial Resources**..................................................................................4

II.    **The May 27 And August 20 Reports Have Other Fatal Flaws That Require Exclusion Under Rule 702** ......................................................9

III.    **Dr. Wind's April 30 Report Subjectively Opines, Without Reliable Data, On Matters For The Court To Decide** ..........................................12

CONCLUSION ............................................................................................................14

Dr. Yoram Wind is a consumer survey expert retained by defendant, G.A.P Adventures, Inc. ("G.A.P") in this matter. He has submitted three reports.[1] Each expresses certain opinions that are fundamentally at odds with all accepted standards governing the use of survey evidence at trial.

Excluding them will significantly promote efficiency, saving a trial day or more by eliminating inherently unreliable opinion evidence. It will permit the parties to focus on the matters genuinely in dispute – whether or not the famous "Gap" mark, one of the most recognizable brands in the United States, is likely to be infringed or diluted by the mark "G.A.P Adventures." Alternatively, should the Court prefer to defer ruling *in limine*, this memorandum serves as a trial brief on the admissibility and weight of Dr. Wind's opinions.

## PRELIMINARY STATEMENT

At the formal conclusion of expert discovery back in July 2009, but without full briefing on the merits, the Court stated that it preferred not to exclude expert testimony pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Instead, it anticipated addressing specific objections as they arose at trial. Keller Decl. Ex. 4. The Court's subsequent order that *in limine* motions be filed a week before the pretrial

---

[1] (1) April 30, 2009 (Exhibit 1 to Declaration of Bruce P. Keller, dated April 27, 2011 ("Keller Decl.")); (2) May 27, 2009 (Keller Decl. Ex. 2); and (3) August 20, 2010 (Keller Decl. Ex. 3).

1

conference, however, provides good reason to review the admissibility of Dr. Wind's opinions to the extent they rely on the three flawed reports.[2]

1.  **The Test And Control (Placebo) Cells In This Case Cannot Both Contain The Word "Gap."**

Fundamental to the admissibility and weight of survey evidence is the proper use of some form of "control." *See, e.g.*, *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 240 (S.D.N.Y. 2010) ("A survey designed to estimate likelihood of confusion must include a proper control."); *Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*, No. 06 Civ. 0034 (PAC), 2006 WL 2588002, at *25 (S.D.N.Y. Sept. 6, 2006) (failure to include any control is "a marked departure from generally accepted market research practices").

One type of control is the creation of two separate cells: (1) test and (2) control. Under that form of experimental design, test cell respondents are shown the allegedly infringing or diluting mark (the "test stimulus") and a separate group of control cell respondents is shown a different stimulus (the "control stimulus"). The control stimulus differs from the one used in the test cell in that it does not have the property – here the trademark – being analyzed. That is done to determine whether factors other than the

---

[2] Because the Court did not consider the merits of Gap's earlier motion, the Court properly may grant Gap's motion even if viewed as a motion for reconsideration. *Fantastic Graphics Inc. v. Hutchinson*, No. 09-CV-2514 (LDW) (ETB), 2010 WL 475309, at *1-*2 (E.D.N.Y. Feb. 8, 2010) (granting reconsideration because the "previous motion for a protective order staying discovery was not considered on its merits"); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 522 F. Supp. 2d 569, 571 (S.D.N.Y. 2007) (noting that a district judge granted reconsideration because prior motion "was not considered on its merits").

allegedly confusing or diluting mark caused positive answers in the test cell.  Shari Seidman Diamond, *Reference Guide on Survey Research*, *in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 229, 257 (2d ed. 2000) (hereinafter REFERENCE GUIDE).

Here, Dr. Wind has taken the unprecedented position that it is proper for both the test and control cells to include the "active ingredient" – the word "Gap."  This flawed premise underlies multiple opinions stated in Dr. Wind's May 27 and August 20 Reports and triggers testimony from two additional witnesses, Dr. Eli Seggev for Gap and Dr. Michael Rappeport for G.A.P.  Both are in this case solely because Dr. Wind is taking such an unusual position.  The Court can, and should, rule as a matter of law that there is no merit to Dr. Wind's novel theory.  If done *in limine* to preclude him from offering such a unique position, that will avoid an unnecessary waste of resources.  Even if done in connection with the admissibility and/or weight of his opinion at trial, it will allow the Court not only properly to assess the survey evidence in this case, but also to provide important guidance to future litigants.

2.     **Dr. Wind's Empirical Evidence Is Tainted By Counsel And Unreliable.**

There is another set of problems with the control stimuli that underlie Dr. Wind's opinions in his May 27 and August 20 Reports that confusion and dilution are unlikely.  He showed respondents stimuli (a) selected by G.A.P's prior counsel and (b) which had absolutely no relationship to the marketplace context in which they might be found.  Keller Decl. Ex. 5 at 238-40, 324-33.  Moreover, his test cells consist of 50 respondents or less, *id.* at 163-64, 171-74, and no case ever has held that such small cell sizes are to be accorded ***any*** weight.

3

3.  **Dr. Wind's April 30 Report Is Subjective And Elevates His Non-Empirical Views To Judicial Findings.**

The opinions expressed in Dr. Wind's April 30 Report do not even purport to rely on any empirical analysis. Keller Decl. Ex. 1 ¶¶ 30, 32. Instead, Dr. Wind's opinions: (1) are based exclusively on his personal assessment of the facts that comprise the legal tests for trademark infringement and dilution unsupported by any survey evidence or other empirical data, and therefore (2) improperly opine on the ultimate legal issue in the case, based on the same facts available to the Court, but not on any scientific methods or procedures. Keller Decl. Ex. 5 at 79, 100-01; Keller Decl. Ex. 6 at 356-57. Because none of the opinions expressed in it is based on any scientific methodology at all, the April 30 Report should be excluded in its entirety.[3]

## ARGUMENT

I.  **Excluding Dr. Wind's Opinions Would Save Significant Time And Judicial Resources.**

*In limine* motions "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). This "fosters efficiency" and "sav[es] time at trial" by obviating the need for testimony that "has been declared inadmissible." 21 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE:

---

[3]   Dr. Wind's May 27 and August 20 Reports identify, in addition to the control issue, other purported flaws in the consumer research surveys conducted on behalf of Gap. Keller Decl. Ex. 2 ¶¶ 12-17 & Ex. 3 ¶¶ 8-15. Although these criticisms all lack merit, Gap is fully prepared to address them at trial in connection with Dr. Wind's testimony.

FEDERAL RULES OF EVIDENCE § 5037.10 (2d ed. 2005).  Motions *in limine* thus "aid in the efficient management of litigation by sharpening 'the focus of later trial proceedings and permitt[ing] the parties to focus their preparation on those matters that will be considered'" at trial.  *Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2009 WL 1759575, at *5 (N.D. Ill. June 22, 2009) (alteration in original) (quoting *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

The linchpin of Dr. Wind's testimony is his contention that the surveys submitted by Gap should have used the word "gap" in both the test and control cells.  Keller Decl. Ex. 2 ¶ 11; Keller Decl. Ex. 3 ¶ 7; Keller Decl. Ex. 5 at 133.  Every respected authority, including the Federal Judicial Center, states flatly and without exception that is improper.

The stimulus used in a control cell is equivalent to a "placebo" pill in a medical experiment.  6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:187 (4th ed. 2011) (hereinafter MCCARTHY ON TRADEMARKS) (noting that "use of a 'control' serves much the same purpose in surveying as use of a placebo does in drug testing" in that it removes the active ingredient being tested so results can be compared).  Its function is to determine what percentage, if any, of responses in the test cell were for reasons other than the allegedly infringing or diluting element in the G.A.P Adventures mark.  *See* REFERENCE GUIDE at 257.  Just as a placebo pill can achieve this only by removing the "active" ingredient being tested, a proper control cell must ***not*** include the mark being tested.  As stated by Professor Diamond in the REFERENCE GUIDE:

> In designing a control group study, the expert should select a stimulus for the control group that shares as many characteristics with the experimental stimulus as possible, ***with the key exception of the characteristic whose***

5

> *influence is being assessed. . . . Nor should the control stimulus share with the experimental stimulus the feature whose impact is being assessed.*

REFERENCE GUIDE at 258 (emphasis added).

Dr. Wind's so-called "control" cells – "Ultimate Gap," "Watch the Gap" and "Bridge the Gap" – all contain the word "Gap,." That word, of course, is the "active ingredient" whose effect the test cell measures. This means that Dr. Wind's cells were not "control" cells at all, but additional cells testing other uses of "Gap" by parties having nothing to do with this case. In other words, by using the word "Gap" in his control cells, Dr. Wind controlled for nothing.

Dr. Wind's "control" stimuli are odd for another reason. In all of them – "Watch the Gap," "Bridge the Gap" and "Ultimate Gap" (for "gap insurance" products) – "gap" is being used not as a trademark, but in its ordinary, descriptive, English-language sense to denote a break or opening. That is a critical distinction. Many ordinary English words, like "Apple" (for computers), "Target" (for retail stores) and "Jaguar" (for cars), have both a dictionary meaning and, through extensive advertising and use over time, a "secondary" or trademark meaning denoting the source or origin of the product. *See* 2 MCCARTHY ON TRADEMARKS §§ 11:87 & 15:6. Dilution cases involve marks that have achieved such a high degree of secondary meaning that they are considered "famous" and entitled to protection against dilution of their distinctiveness. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 25 cmt. e (1995) (for a mark to be famous, it must "possess a degree of distinctiveness beyond that needed for the designation to qualify as a valid trademark").

No matter how "much" secondary meaning exists, another party always may, in good faith, use a word in its primary, dictionary definition sense without liability. 2 MCCARTHY ON TRADEMARKS § 15:6 ("old, primary, and descriptive meaning" of a word "remains free for all sellers to legally use in a descriptive sense").  Thus, Apple, the computer company, cannot prevent the New York State Apple Growers Association from using "Apple" to refer to the fruit.

None of the "control" stimuli used by Dr. Wind infringes or dilutes Gap for this reason.  All Dr. Wind's purported control study demonstrates is that, when shown phrases with the word "gap" devoid of any marketplace context, consumers still associate them with Gap.  That is a further testament to Gap's strength and fame, but says nothing about confusion or dilution by G.A.P Adventures.

Dr. Wind's use of control stimuli that also use the word "Gap" is so methodologically and scientifically unsound that it has been expressly rejected by every treatise and every court that has considered the issue.  *Dicta* in one case, however, Magistrate Judge Ellis' opinion in *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266 (S.D.N.Y. 2006), suggests a contrary view.  For that reason, Gap retained the expert who testified in that case, Dr. Seggev, whose report Judge Ellis did not accurately summarize.  Dr. Seggev's role in this case is to introduce that prior report so that this Court is not led astray by the *24 Hour Fitness* opinion.  Keller Decl. Ex. 7.

In *24 Hour Fitness*, both parties operated gyms that were open continuously.  The plaintiff alleged that the defendant's trademark, "24/7 Fitness Club," infringed and

diluted its trademark, "24 Hour Fitness."  It offered consumer survey evidence in support of its claims.  *24 Hour Fitness*, 447 F. Supp. 2d at 279-82.  Test cell respondents in that survey were shown a television commercial for 24 Hour Fitness, while respondents in the control cell were shown a television commercial for Lifetime Fitness.  *Id.* at 279.

Judge Ellis implied in *dicta* that, because the plaintiff had agreed to "acceptable uses" of other marks using "24," such as "Fit 24 Club" and "Workout 24/7," the survey should have, but "[a]s conducted, [did] not[,] measure the amount of confusion between '24 Hour Fitness' and names such as ['Fit 24 Club' and 'Workout 24/7'], or a name such as 'All Day Gym,' for that matter."  *Id.* at 280.

That statement, to the extent it implies that it is proper to use the contested element of the parties' marks in a control stimulus, is plainly incorrect and not based on anything Dr. Seggev said or wrote.  To the contrary, as Dr. Seggev's declaration makes clear, it would "not be appropriate scientifically" to use "24" or "24 Hour" in the control cell.  Keller Decl. Ex. 7 ¶ 5.  That is why his report in the *24 Hour Fitness* case literally says, consistent with every authority in the field, that "the control cell should have been another fitness establishment that is opened 24 hours and **which does not incorporate that fact [24 hours] in its name** but communicates it to the public in the body of its messages in whatever media it is using."  *Id.* ¶ 7 & Ex. 5 at 2.  The point that Dr. Seggev actually made in *24 Hour Fitness* was that the gym in the control cell should be open 24 hours a day, not that it should use "24 hours" in its name.

Because Dr. Seggev was able to correct the record as to what he actually said, G.A.P was required to retain a sur-rebuttal expert, Dr. Rappeport.  Without citation to any

8

treatise or case (other than *24 Hour Fitness*), Dr. Rappeport parrots Dr. Wind's contention that it is "scientifically appropriate for confusion and dilution studies to use the same contested term in the controls as in the accused mark."  Keller Decl. Ex. 8 ¶ 17.

This is wasteful.  The testimony of the three experts will consume an inordinate amount of trial time on a basic issue about which there should be no dispute as a matter of law.  In every case where a purported control cell incorporated the contested element into the stimulus the court has condemned the control.  *Gov't Emps. Ins. Co. v. Google, Inc.*, No. 1:04CV507, 2005 WL 1903128, at *5 (E.D. Va. Aug. 8, 2005) (rejecting survey because "the control retained the use of 'GEICO' as a keyword, which itself was alleged to be a source of confusion" when it "should have removed . . . the allegedly infringing elements for which GEICO wanted to measure confusion . . . while keeping the other elements as constant as possible"); *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D., SPC, Inc.*, 655 F. Supp.2d 979, 999 (D.S.D. 2009) (criticizing control stimulus used by Dr. Rappeport for including the term "'First National,' the mark which is allegedly infringed" because "such control would increase survey noise and artificially diminish the level of confusion").

## II. The May 27 And August 20 Reports Have Other Fatal Flaws That Require Exclusion Under Rule 702.

To be admissible, expert testimony must (1) be "based upon sufficient facts or data"; (2) be "the product of reliable principles and methods"; and (3) apply the method "reliably to the facts of the case."  FED. R. EVID. 702.  Applied to consumer surveys, this means they are inadmissible unless they replicate, to the extent possible, the marketplace

conditions under which consumers will be exposed to the stimulus being measured. *Am. Footwear Corp. v. Gen. Footwear Co. Ltd.*, 609 F.2d 655, 660 n.4 (2d Cir. 1979) (affirming exclusion, failure to conduct survey "under actual marketing conditions" was "critical"); *WE Media Inc. v. Gen. Elec. Co.*, 218 F. Supp. 2d 463, 474 (S.D.N.Y. 2002) (survey that did not "approximate what a potential customer would encounter" did not "go to the issue at bar"); *Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 308 (S.D.N.Y. 2001) ("A survey must use a stimulus that, at a minimum, tests for confusion by roughly simulating marketplace conditions.").

Dr. Wind ignored this. He did not show respondents any marks as they would be encountered in the marketplace. Instead, he printed them on sheets of paper, "divorced" from any context. Keller Decl. Ex. 5 at 328. That is the opposite of a marketplace replication and is exactly what an expert should not do. *Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, No. 06 Civ. 550 (JFK), 2007 WL 2258688, at *10 (S.D.N.Y. Aug. 6, 2007) ("A survey that uses stimuli that differ from what a consumer is actually likely to see in the marketplace . . . lacks probative value.").

Worse still, G.A.P's prior counsel actually selected the stimuli. Keller Decl. Ex. 5 at 324-33; Keller Decl. Ex. 6 at 417-18 (admitting he conducted no investigation whatsoever as to even whether, let alone how, the stimuli were used in the marketplace); Keller Decl. Ex. 5 at 332-33, 324 (Dr. Wind relied on counsel to select the stimuli). There is no probative value to a survey in which a party's law firm exercises such a high degree of involvement. The survey then becomes evidence manufactured by counsel, as opposed to evidence that meets the standard of Rule 702. *Greenpoint Fin. Corp. v.*

*Sperry & Hutchinson Co., Inc.*, 116 F. Supp. 2d 405, 409 (S.D.N.Y. 2000) (criticizing a survey's "lack of objectivity in creation and determination of parameters because of the involvement of Plaintiff's law firm"); *see also U.S. E.E.O.C. v. Rockwell Int'l Corp.*, 60 F. Supp. 2d 791, 797 (N.D. Ill. 1999) (excluding expert report under Rules 702 and 703 because the expert "relied on materials, reports and summaries given to him by counsel, and failed to verify the information from reliable, independent sources"); *Barna v. United States*, No. 95 C 6552, 1997 WL 417847, at *2 (N.D. Ill. Jul. 28, 1997) (noting the danger that "expert testimony may become another way in which counsel places his view of the case or the evidence in front of the jury").

  Moreover, none of the cell sizes in Dr. Wind's replication survey reached 50 respondents. Keller Decl. Ex. 2 ¶ 20(e) (cell sizes of 47, 44, 43, 22, 20 and 22 respondents). Cell sizes this small have no probative value. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 632-33 (S.D.N.Y. 2007) (excluding a likelihood of confusion survey and noting that, even if it had been admissible, its "reliability and probative value" would have been diminished to the point of inadmissibility because the cells contained an average of 55 respondents); *Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02 Civ. 3691 (DLC), 2004 WL 326708, at *9-*10 (S.D.N.Y. Feb. 23, 2004) (excluding, under Rules 403 and 702, a survey in which the cells contained only 27 and 25 respondents because "[i]t is misleading to assert that a figure based on a difference of so few respondents provides an accurate gauge of any confusion on the part of the population"); *Procter & Gamble Pharm.*, 2006 WL 2588002, at *25 (false advertising case; cell size of 63 physicians "is too small to be reliable"). Dr. Wind, at his

deposition, could not cite a single court case or even a major marketing client who relied on cell sizes of less than 50.  Keller Decl. Ex. 5 at 175-85.

III.  **Dr. Wind's April 30 Report Subjectively Opines, Without Reliable Data, On Matters For The Court To Decide.**

Opinions that are "connected to existing data only by the *ipse dixit* of the expert" are unreliable, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), because they do not demonstrate a "sufficiently rigorous analytical connection between [the expert's] methodology and the expert's conclusions" to satisfy the threshold requirements for admissibility under Rule 702.  *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." (quoting *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 155 (3d Cir. 1999))); FED. R. EVID. 702.  Indicia of reliability are especially crucial in trademark cases because, absent any empirical measurement of consumer reaction, personal opinions on confusion and dilution, no matter how qualified the expert may be, are inherently subjective.  *See  Malletier*, 525 F. Supp. 2d at 562 ("In cases arising under the Lanham Act, the Court's gatekeeper function is of heightened importance.").

In Lanham Act cases, a marketing expert's "personal belief" cannot be a substitute for how "the relevant purchasing group . . . would evaluate and act upon" the defendant's mark.  *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 440 (D.N.J. 2009); *see also* 3 ANNE GILSON LALONDE, GILSON ON TRADEMARKS

§ 8.13 (2011) ("A witness must show that the evidence sheds light on the perception of actual purchasers of the product and is not just an academic understanding of the mark or the hypothetical understanding of some purchasers."). Acknowledged experts, such as Professor Diamond, Keller Decl. Ex. 5 at 21-22, recognize that proper consumer reaction evidence "virtually demands" proper survey research. REFERENCE GUIDE at 235; *see also Patsy's Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483, 485 (E.D.N.Y. 2008) ("The usual method to introduce evidence on the issue of likelihood of confusion is through consumer surveys."); *Malletier*, 525 F. Supp. 2d at 562 (same).

Dr. Wind knows this. He has testified that there is "no substitute to having a good consumer survey," Keller Decl Ex. 5 at 16, and that opining without empirical evidence is "less than ideal." *Id.* at 71. This raises substantial questions as to why he was instructed to opine without empirical evidence. *Id.* at 15 (counsel told him not to conduct a survey); Keller Decl. Ex. 6 at 357-58. In fact, a negative inference against G.A.P should be drawn from Dr. Wind's ***failure initially*** to conduct ***any*** consumer perception research to support his opinions and his ***failure ever*** to test "G.A.P Adventures." *See Johnson & Johnson v. Actavis Grp. HF*, No. 06 Civ. 8209 (DLC), 2008 WL 228061, at *6 (S.D.N.Y. Jan. 25, 2008) (party's "failure to present its own consumer survey weighs strongly against" it); *M & G Elecs. Sales Corp. v. Sony Kabushiki Kaisha*, 250 F. Supp. 2d 91, 104 (E.D.N.Y. 2003) (same).

In the absence of empirical research, the opinions that confusion and dilution are "unlikely" are based on Dr. Wind's subjective views on the same facts available to the Court. Not only does this "usurp the [fact finder's] role in making fact determinations,"

13

*Patsy's Italian Rest.*, 531 F. Supp. 2d at 486, but it is precisely the sort of *ipse dixit* that is inadmissible under Rule 702. *See Joiner*, 522 U.S. at 146; *Patsy's Italian Rest.*, 531 F. Supp. 2d at 486 (brand marketing expert with 25 years' experience excluded because he "drew his conclusions based upon his own personal knowledge and expertise" rather than scientific methodology); *Troublé*, 179 F. Supp. 2d at 302 (proffered testimony must be based on something "more than subjective belief or unsupported speculation" (quoting *Daubert*, 509 U.S. at 590)); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("speculative or conjectural" expert testimony inadmissible); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

## CONCLUSION

To the extent Dr. Wind's opinions are based on: (1) test and control cells that both contain the word "Gap"; (2) stimuli selected entirely by counsel and shown only to small groups of respondents; and (3) Dr. Wind's subjective beliefs on issues that invade on this Court's legal analysis, they violate Rule 702 of the Federal Rules of Evidence. It would waste an enormous amount of time and resources to allow them at trial. That testimony should be excluded.

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP


By: /s/ Bruce P. Keller
    Bruce P. Keller
    Michael Potenza
    Camille Calman
919 Third Avenue
New York, New York 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836

*Attorneys for Plaintiffs*