UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                             :

THE GAP, INC., and
GAP (APPAREL) LLC,                  :    07 Civ. 9614 (AKH)
                                             :

                        Plaintiffs, and     :
                    Counterclaim Defendants   :
                                             :

          -against -                  :
                                           :

G.A.P ADVENTURES INC.,          :
                                         :

                      Defendant, and   :
                    Counterclaim Plaintiff.   :
                                           :
-------------------------------------------------------x

## DEFENDANT G.A.P ADVENTURE'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE, OR ALTERNATIVELY ON WEIGHT AND ADMISSIBILITY AT TRIAL OF, DR. YORAM WIND'S EXPERT TESTIMONY

## Table of Contents

I.   Introduction .................................................................................................................1

II.  Argument ......................................................................................................................2

     A.   Plaintiffs' motion is an untimely motion for reconsideration ...............................2

     B.   Dr. Wind's controls appropriate accounted for third party uses to
          which Plaintiffs have consented......................................................................3

     C.   Dr. Wind's study is properly conducted and an accurate reflection
          of the absence of both consumer confusion and dilution........................................4

     D.   The Court has already held that Dr. Wind is qualified as an expert
          and he can therefore opine on the ultimate issue in the case ...................................7

III. Conclusion ....................................................................................................................8

## Table of Authorities

**Cases**

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.*,
    447 F. Supp. 2d 266 (S.D.N.Y. 2006)....................................................................... 3

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ................................................................................. 5

*J&J Snack Foods, Corp. v. Earthgrains Co.*,
    220 F. Supp. 2d 358 (D.N.J. 2002) .......................................................................... 6

*Johnson & Johnson v. Activis Grp. HF*,
    No. 06 Civ. 8209 (DLC), 2008 WL 228061 (S.D.N.Y. Jan. 25,
    2008) ..................................................................................................................... 8

*M&G Electronics Sales v. Sony Kabushiki Kaisha*,
    250 F. Supp. 2d 91 (S.D.N.Y. 2003)........................................................................ 8

*Malletier  v. Dooney & Burke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007)....................................................................... 4

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
    848 F.2d 34 (2d Cir. 1988)...................................................................................... 5

*Schering Corp. v. Pfizer, Inc.*,
    189 F.3d 218 (2d Cir. 1999).................................................................................... 5

**Other**

Fed. R. Civ. P. 60(c)(1)................................................................................................ 2

Fed. R. Ev. 704 .......................................................................................................... 7

I.      **Introduction**

          Defendant G.A.P Adventures Inc. (hereinafter "Defendant"), opposes Plaintiffs'
Motion *in Limine* to Exclude, or Alternatively on Weight and Admissibility at Trial of, Dr.
Yoram Wind's Expert Testimony.  Plaintiffs motion alleges that it is intended to "promote
efficiency" at trial.  However, their motion has the opposite effect.  Almost two years ago
Plaintiffs filed a similar motion *in limine* to exclude Dr. Wind's opinion.  The Court almost
immediately denied the motion and explained that objections to Dr. Wind's opinions would be
addressed during his live testimony.  Plaintiffs actually impede judicial efficiency by asking the
Court in the instant motion to re-review the same issues it has already ruled upon, thereby
imposing an unnecessary burden on the Court and Defendant as they prepare for trial.

          Even if the Court were to consider the merits of Plaintiffs' motion at present, it
should be denied.  First, Dr. Wind's controls properly accounted for, and therefore "controlled
for", uses of the word "gap" to which Plaintiffs have consented – a fact ignored by Plaintiffs'
experts.  Second, Plaintiffs are erroneous in their contention that Dr. Wind's stimuli were
selected by counsel.  Counsel merely provided support and images that were requested by Dr.
Wind, but Dr. Wind designed the survey and identified the types of stimuli to be used.  To the
extent that Plaintiffs contend that the stimuli had no relationship to the marketplace in which
they are found, this provides further evidence that Plaintiffs' mark is called to mind when the
word is used in a stimulus and a leading question is asked regardless of the context,
demonstrating that there is a level of dilution existing already for that mark; i.e., that its alleged
distinctiveness is already impaired .  Plaintiffs also mischaracterize the size of Dr. Wind's test
cell as "50 respondents", thereby ignoring that Dr. Wind used multiple sub-cells which, when
aggregated, included almost 140 people – a universe that was more than sufficient under the
circumstances.  Third, Plaintiffs seek exclusion of Dr. Wind's opinions as "subjective" and as

opining on the ultimate legal conclusion in the case. However, the Court has already held that

Dr. Wind is sufficiently qualified to testify in this case and, as an expert, he is permitted to opine

on the ultimate legal conclusion in the case.

## II.  __Argument__

### A.  __Plaintiffs' motion is an untimely motion for reconsideration__

Plaintiffs filed this motion to eliminate Dr. Wind's testimony at trial which would

"significantly promote efficiency". (Pl. Mem. 1). However, this motion does nothing of the sort.

Rather, it burdens the Court with a motion very similar to one previously filed by Plaintiffs. On

July 14, 2009, Plaintiff filed a Motion in Limine to Exclude the Testimony of Dr. Yoram Wind.

(Dkt. No. 43). Without waiting for Defendant's brief in response, the Court denied the motion

just two days later and stated in response: "The expert is sufficiently qualified to testify on one

or more of the subjects of his reports, subject to specific objections as questions are put." (Dkt.

No. 47).

To the extent that this motion addresses the same issues that were previously

before the Court in the Plaintiffs' first motion, the issue has been decided. Plaintiffs next attempt

to frame this motion as one for reconsideration. (Pl. Mem. 2, fn. 2). However, the Rules require

that a motion for reconsideration be filed "within a reasonable time—and [in certain

circumstances] no more than a year after the entry of the . . . order. . . ." Fed. R. Civ. P. 60(c)(1).

The Court denied Plaintiffs' first motion on July 16, 2009. Now, almost 2 years later, Plaintiffs

again ask the Court to the preclude Dr. Wind's testimony. Plaintiffs' motion offers no reason

whatsoever why they could not have filed this motion sooner.[1]

---

[1]    Dr. Wind filed his first expert report in April 2009, a Rebuttal Report in May 2009 and a
Supplemental Rebuttal Report in August 2010. Dr. Wind was deposed on June 26, 2009.
Plaintiffs offer no reason why they needed to wait until the eve of trial, and more than 8
months after Dr. Wind's last filed report, to raise these issues.

Plaintiffs' motion should be denied in its entirety as an untimely motion for reconsideration.  Nonetheless, the remainder of Defendant's brief responds to the merits of Plaintiffs' motion, if the Court does not dismiss it as untimely.

**B.    Dr. Wind's controls appropriate accounted for<br>third party uses to which Plaintiffs have consented**

Dr. Wind used proper controls in his study.  In fact, Dr. Wind's controls, which accounted for the Plaintiffs' acquiescence to third party uses of "gap", are the most reliable measure of the likelihood of confusion and dilution.

Often trademark surveys use as a control a stimulus that shares characteristics with the test stimulus except for the characteristics at issue.  However, where the evidence demonstrates that a plaintiff has settled a number of enforcement actions by agreeing that there are acceptable uses of the characteristic at issue (here the word "gap"), whether as trademarks or as descriptors, the survey is of little value if it does not test those acceptable uses as "controls".  If that is not done, the typical control stimulus like Plaintiffs' experts used, does not measure the amount of confusion or dilution between the plaintiff's mark and those approved uses or the amount of such confusion or dilution as compared to the defendant's use.  *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.*, 447 F.Supp.2d 266, 280 (S.D.N.Y. 2006).

Dr. Wind's controls were third party uses to which Plaintiffs agreed with or did not object to – uses where "gap" is "being used not as a trademark, but in its ordinary, descriptive, English-language sense to denote a break or opening."  (Pl. Mem. 6).  Therefore, under the case law, Dr. Wind's controls were not only proper but, as permitted third party uses, necessary to control against any confusion or dilution that exists elsewhere in the marketplace based on acceptable uses of the word "gap".

- 3 -

Dr. Wind's methodology simply adhered to this principle.  As Dr. Wind explained:  "While deleting the part of the name which is in dispute to create a control may be appropriate in many situations, in this particular case when (a) "Gap" is a proper English word the meaning of which depends on its context and when (b) there is a dominant brand that even appears in the dictionary definition of the word, it is an appropriate choice of control.  The correct control should have been a name that includes the word "Gap" and which has been authorized or accepted by [Plaintiffs] The Gap." (Keller Decl. Ex. 2, ¶ 11; *see also* Wind Tr. 140:21-142:2).

For these reasons, Dr. Wind's controls were appropriate and Plaintiffs' motion in this regard should be denied in its entirety.  In any event, "[a] survey with an imperfect control group generally provides better information than a survey with no control group at all . . .". *Reference Guide on Survey Research in MANUAL ON SCIENTIFIC EVIDENCE* 2d at 258 (Federal Judicial Center 2000, as cited in *Malletier v. Dooney & Burke, Inc.*, 525 F.Supp.2d 558, 596 (S.D.N.Y. 2007) ("[t]he flawed choice of control bag is probably not on its own dispositive of the admissibility of the survey."). 525 F.Supp.2d at 596.

### C.    Dr. Wind's study is properly conducted and an accurate reflection of the absence of both consumer confusion and dilution

Dr. Wind's study was properly conducted and Plaintiffs' criticisms mischaracterize both the study and its methodology.  Plaintiffs allege that Dr. Wind's study (1) did not use the marks as they would be encountered in the marketplace, (2) was tainted by using stimuli selected by counsel and (3) included a universe of respondents that was too small to have probative value.  None of these criticisms have merit.

Even if Plaintiffs were correct that Dr. Wind's surveys were "flawed" for these reasons, such "flaws" would not make them inadmissible.  Errors in a survey's methodology

usually go to the weight accorded to the conclusions rather than its admissibility.  *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 225 (2d Cir. 1999).  Indeed, this is consistent with the Manual of Complex Litigation relied upon by Plaintiffs.  "Even if the court finds deficiencies in the proponent's showing [to submit evidence of an opinion survey], the court may receive the evidence subject to argument going to its weight and probative value."  *Manual of Complex Litigation*, Section 11.493 (4th ed. 2004) (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992); *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988)).  For this reason alone, Plaintiff's motion should be denied.  Nonetheless, Defendant addresses Plaintiffs' specific criticisms in further detail below.

First, Plaintiffs contend that the stimuli had no relationship to the marketplace in which they are found.  However, showing consumers stimuli devoid of a specific marketplace context only provides stronger support that there is no likelihood of confusion or dilution.  Specifically "the mere fact that the signs were not presented in a storefront, in [Dr. Wind's] view, actually strengthened the fact that they are a good measure of prior beliefs of people concerning the use of the word 'gap' that occurs in different contexts." (Wind Tr. 189:21-190:9).

In other words, even when consumers were simply shown words or phrases that include the word "gap", consumers still often attributed such uses to the Plaintiffs.  The consumer association with the Plaintiffs mark in that "un-aided" context demonstrates that when the term is encountered and a leading question focused on a "brand" or "company name" is asked Plaintiffs' mark is called to mind.  This demonstrates that there is some base level of association of the mark that exists in the public mind which Defendant's use does not exceed and that the leading question prompts the respondent to guess a brand name that it is most familiar with.  Thus, the alleged distinctiveness of Plaintiffs' mark is already impaired.

- 5 -

Second, Plaintiffs are erroneous in their contention that Dr. Wind's survey was tainted by counsel and that his stimuli were selected by counsel. Counsel merely provided support when requested by Dr. Wind who was the sole designer of the survey. Counsel did not suggest in the first instance what controls be used in the survey, but rather when Dr. Wind requested from counsel uses of the word "gap" in the marketplace that Plaintiff has not opposed, Counsel provided such examples. (Wind Tr. 129:18-130:21; Keller Ex. 1 at 40-41 (exhibits attached to Dr. Wind's report identifying third party uses of "gap" which Plaintiffs have either explicitly agreed to or otherwise not opposed)). Moroever, Dr. Wind decided that additional stimuli should be included in the survey. (Wind Tr. 173:13-175:22). Dr. Wind informed counsel of his thoughts and they simply agreed to the additional survey expense – counsel did not require the addition of other stimuli. (Wind Tr. 173:13-175:22). Counsel did not dictate the survey stimuli or the methodology to be used. Rather, counsel simply provided the type of factual examples that were specifically requested by Dr. Wind. This type of minimal attorney involvement has even been recognized as a necessary and useful part of litigation. *See McCarthy on Trademarks* § 32:166. The "only relevant limitation is that the attorneys do not *conduct* the survey." *Id.* "However, some attorney involvement in the survey design is necessary to ensure that relevant questions are directed to a relevant population . . . . [T]he interviews themselves are not directed visible and potential bias is minimized by having interviewers and respondents blind to the purpose and sponsorship of the survey and by excluding attorneys from any part in conducting interviews and tabulating results." *Id. (quoting Reference Manual on Scientific Ev.*, pp. 237-239 (Federal Judicial Center 2d ed. 2000); *see also J&J Snack Foods, Corp. v. Earthgrains Co.,* 220 F. Supp. 2d 358 (D.N.J. 2002). Moreover, Plaintiffs take issue with the idea that they "authorized" these third party uses included in Dr. Wind's survey. However, Dr.

Wind's report set forth exactly the basis upon which he concluded that these uses were authorized, citing to the testimony of several witnesses deposed in this litigation. (Keller Decl. Ex. 2, p. 12 fn 1). Plaintiffs do not address this point nor any of that testimony.

Third, Plaintiffs' motion is based on the faulty premise that Dr. Wind's survey relies on the responses of only 50 respondents – a number Plaintiffs allege to be an insufficient universe of respondents. Plaintiffs, however, have mischaracterized the size of Dr. Wind's test cell as "50 respondents". Dr. Wind's testimony clearly explained that his analysis was not based on 50 responses. Rather, Dr. Wind's survey included multiple sub-cells of 44-47 respondents that, when aggregated, totaled almost 140 people. (Wind Tr. 165:13-166:6; 169:15-171:13).[2] Plaintiffs' motion, however, does not contend, nor can it, that Dr. Wind's correctly characterized universe of 140 respondents is insufficient data upon which to base his expert opinions.

**D.  The Court has already held that Dr. Wind is qualified as an expert and he can therefore opine on the ultimate issue in the case**

Finally, Plaintiffs seek exclusion of Dr. Wind's opinions as "subjective" and as opining on the ultimate legal conclusion in the case. However, the Court has already held that Dr. Wind is sufficiently qualified to testify in this case. (Dkt. No. 47). As an expert, he is permitted to opine on the ultimate legal conclusion in the case. In fact, the Federal Rules of Evidence specifically contemplate this type of testimony. Fed. R. Ev. 704 ("[T]estimony in the form of an opinion otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). To the extent that Plaintiffs position is based on their belief that Dr. Wind's survey evidence is inadmissible, this theory should be dismissed because,

---

[2] In contrast, as will be demonstrated at trial, Plaintiffs' expert Dr. Ford used a test cell with 101 respondents in one of his surveys.

for the reasons provided above, Dr. Wind's survey evidence is admissible and presents an accurate view of the marketplace.[3]

## III.   <u>Conclusion</u>

For the reasons set forth above, Plaintiffs' motion should be denied in its entirely and, as the Court has previously ruled, Dr. Wind should be permitted to testify as a qualified marketing and survey expert.

Respectfully submitted,

Dated:  May 3, 2011

FITZPATRICK, CELLA, HARPER & SCINTO

Pasquale A. Razzano (7340)
Timothy J. Kelly (8241)
1290 Avenue of the Americas
New York, NY 10104
212/218-2100 (phone)
212-218-2200 (fax)
prazzano@fchs.com
tkelly@fchs.com

*Attorneys for G.A.P Adventures Inc.*

---

[3] Plaintiffs are simply wrong when they assert that a negative inference against G.A.P Adventures is appropriate in light of Dr. Wind's "failure initially to conduct any consumer perception research to support his opinions and his failure ever to test "'G.A.P Adventures'." (Pl. Mem. 13).  A defendant has no obligation to conduct a survey because a defendant does not bear the burden of proof.  In fact in this case the multiple years of co-existence here without evidence of actual confusion is ample evidence that no confusion is likely.  Neither the *M&G Electronics* nor the *Johnson & Johnson* cases cited by Plaintiffs provide support for their position.  An adverse inference may be appropriate against a *Plaintiff* who does not conduct a survey, especially in the face of years of concurrent use without evidence of confusion. *See, M&G Electronics Sales v. Sony Kabushiki Kaisha*, 250 F.Supp.2d 91, 104 (S.D.N.Y. 2003); *see also, Johnson & Johnson v. Activis Grp. HF*, No. 06 Civ. 8209 (DLC), 2008 WL 228061, at *6 (S.D.N.Y. Jan. 25, 2008).  No such inference is appropriate against a defendant.

FCHS_WS 6436868v1.doc