UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
THE GAP, INC., and :
GAP (APPAREL) LLC, : 07 Civ. 9614 (AKH)
:
         Plaintiffs, and : ECF Filing
     Counterclaim Defendants, :
:
       -against - : **DECLARATION OF BRUCE POON**
: **TIP IN SUPPORT OF G.A.P**
G.A.P ADVENTURES INC., : **ADVENTURES INC.'S MOTIONS TO**
: **AMEND OR ALTER THE PERMANENT**
     Counterclaim Plaintiff. : **INJUNCTION AND ORDER AND TO**
: **SUSPEND OR STAY THE**
------------------------------------------------------------x **INJUNCTION PENDING APPEAL**

I, Bruce Poon Tip, do hereby declare and state as follows:

1. I am the CEO of G.A.P Adventures, the Defendant in this litigation.

2. G.A.P Adventures was started in Canada more than two decades ago. G.A.P Adventures has been offering its services under the mark G.A.P Adventures in the United States since 1992.

3. I was not aware of Plaintiffs The Gap or Gap Apparel in 1990 when I selected the name G.A.P Adventures as the name for my travel services company. When I later came to learn of The Gap, I believed that because I operated in the travel field and not clothing, there could (and should) be no issues.

4. Plaintiffs first objected to G.A.P Adventures' activities in Canada in 2005, and not until 2007 in the United States when it opened its concept stores in Toronto and then New York.

5. Beginning in the early 1990s and through until today, G.A.P Adventures' business of offering ecologically and socially conscious adventure tours has naturally and consistently grown, driven by the high quality of our products and by travel agent and Internet-based sales. Today G.A.P Adventures is the largest adventure tour operator in the world, currently with more than $120,000,000 Canadian Dollars in annual global sales. G.A.P Adventures currently makes over $17 million dollars in sales in the United States annually.

6. As a result of G.A.P Adventures' success, I have been asked by many organizations throughout the world to be a speaker on a wide range of topics, but frequently on the concept and implementation of sustainable tourism. I have never been asked at such engagements whether I was associated or affiliated in any way with The Gap.

7. On July 7, 2011, Plaintiffs' Canadian counsel advised G.A.P Adventures' Canadian counsel about Plaintiffs' view of the scope of the Court's July 6th Permanent Injunction and Final Order. On July 8, Plaintiffs' Canadian counsel sent G.A.P Adventures Canadian counsel a confirming letter stated in relevant part, that the Court's order:

> provides that all uses of 'Gap', 'Gap Adventures' and the revised stylized logo 'gapadventures' on your client's website at <www.gapadventures.com>, in 'Social Media', . . . must cease by July 27, 2011 pursuant to paragraph 1 of the Order.

It is G.A.P Adventures' understanding that Paragraph 2(b) of the Permanent Injunction Order was intended to allow G.A.P Adventures to continue to use its existing website and social media accounts in their current form. As the joint letter of June 17, 2011 to the Court stated in Defendant's section, at page 15, last paragraph, concerning its proposed changes to the Plaintiffs' form of order, the goal of the Paragraph 2(b) was to have "a single change done with care and legal clearance within the Transition Period . . . to accomplish the goals of the Court's Order while doing minimal harm to Defendant." Likewise, at page 16 of that letter, it was stated that "the requested Transition Period would only allow the same kind of use that has accrued on the internet or with travel agents in the past . . ." and that the "additional harm the requested continued use might do . . . does not outweigh the harm to Defendant in shutting down its business. . . ." GAP Adventures believes that the Court's statement in the last paragraph of its accompanying Order Implementing Permanent Injunction that "G.A.P Adventures may continue to use its existing, globally accessible website and social media accounts" is consistent with the language of the injunction G.A.P Adventures originally proposed and which was adopted by the Court.

8. If Plaintiffs' interpretation of the existing order, as set forth above, is given effect G.A.P Adventures could not comply with changing its website to use only the

formal "G.A.P Adventures" after July 27th, as explained in the Christopher and Wisniak declarations, meaning that G.A.P Adventures would have to close down its global website and its global social media accounts and effectively stop operating in this country. Even if changing all appearances of our logo or other uses of the printed name gapadventures to the specific form of "G.A.P Adventures" were possible before July 27th, doing so would cause Defendant to spend time and resources that should be devoted to expediting the required new name change itself.

        9.      Likewise, with regard to social media, G.A.P Adventures' contact addresses include its name as 'gapadventures' and if that cannot be used then these communications must cease as well. Those communications are primarily social or informative. No purchases or sales are made through them. At least in the case of Facebook, it is not possible for G.A.P Adventures to block U.S. recipients from accessing the G.A.P Adventures Facebook account in Canada, because we do not have the ability to identify where Facebook followers live. Only Facebook has and controls that information. Moreover, U.S. subscribers would have to change their subscriptions on their own – there is no way for us to make sure all U.S. subscribers are automatically switched. That would mean that form of communication would have to be shut down worldwide. (*See* Hickey Declaration) Here again, the June 17, 2011 letter, pages 18-19, makes clear the language of Paragraph 2(f) was intended to allow for continued use of our name and addresses in social media during the Transition Period. The "addresses" do not (and cannot) use the form G.A.P Adventures as periods cannot be contained in such addresses. In addition G.A.P Adventures cannot control what third parties post on these websites.

10.     With respect to the request for a stay, developing a name and changing the name of an existing business (especially one that has been operating for nearly 20 years), takes time. However, despite the fact that G.A.P Adventures will appeal the Court's decision, G.A.P Adventures intends to be in a position to comply with the Court's injunction if a stay is not granted by this court or the Court of Appeals. In that case G.A.P Adventures would be operating under one name in the United States and another name in every other country of the world. Then if the appeal is successful it would be put through the burden of repeating that name change process to make its U.S. business name consistent with the rest of the world.

11.     G.A.P Adventures has already taken steps to engage an acceptable branding firm that will identify and screen possible business names, trademarks and domain names. Within days of the Court's June 2nd bench decision G.A.P Adventures began soliciting Requests for Proposals (RFPs) from branding consultants to assist it in selecting a new name. The requirements of the RFP were to identify an appropriate new name within two months. About 17 RFPs were sent out but only 3 proposals were made. The other candidates refused to submit proposals because they felt they needed at least six months to do the project properly. Of the 3 bidders, one agency has now been retained, Level 5. Level 5 has committed to complete the project of identifying a suitable new name by mid August and then completing the steps necessary to implement the adoption of that name by mid-September.

12.     The process to be followed is described in the accompanying declaration of David Kincaid of Level 5.

13.     Once an acceptable new name is identified and cleared as described in the Declaration of Mr. Kincaid, then all of the documentation of the company that is used in the United States, including new brochures and ads will be re-designed, re-printed, and use

commenced.  The new print materials will be distributed throughout G.A.P Adventures network of travel agents and business partners in the United States, which totals nearly 17,000 entities.

14. Also once the new name is selected, G.A.P Adventures will have to acquire new URL's, domain names and websites using the new domain name.  Such names typically are acquired through auctions (which extend over long periods of time) or through purchase negotiations.  G.A.P Adventures will also need to re-design its website and comb through its many thousands of pages of website content to ensure that no references or links remain to the G.A.P Adventures name that would be accessible to United States consumers.  This process is described in detail in the declarations of Ashley Christopher and Marc Wisniak.

15. Because I operated G.A.P Adventures in the United States for about 15 years before Plaintiffs initiated this action, and because this action was started shortly after I opened our New York City Concept Store, it seems evident to me that The Gap's primary concern in the US is the Concept Store.  Accordingly, I have issued instructions to remove the name G.A.P Adventures from the exterior of the building and in window signs in compliance with the Court's Order.  I intend to refrain from using the name G.A.P Adventures on signs at the Concept Store even if the stay G.A.P Adventures is requesting is granted.  I have also instructed my counsel to abandon the pending U.S. Trademark application to register G.A.P Adventures immediately.

16. Further, although our business has never focused on clothing, and although to the extent clothing has ever been sold or distributed by us in the United States it was always done in association with our travel services, G.A.P Adventures stopped selling and distributing clothing under the G.A.P Adventures name in the United States several years ago

and agrees not to do so during the pendency of the appeal or in the future, even if the stay is granted.

17.     G.A.P Adventures is committed to completing the process of selecting and clearing a new name promptly. Selecting a new name is a time consuming and expensive process that G.A.P Adventures is committed to complete expeditiously but in an orderly fashion. While G.A.P Adventures is hopeful that its appeal in this matter will ultimately be successful, it is nonetheless engaging in the name selection, adoption and implementation process so that if the appeal is not successful, the company will be in a position to make a swift changeover. To force it to do so before the appeal is decided is asking G.A.P Adventures to make two changes, one as soon as a name can be selected, and then another (back to G.A.P Adventures), if the appeal is successful. For a company such as ours that has been doing business in the United States for nearly twenty years without any actual diversion of sales, the harm to our business from this scenario would be immeasurable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 13, 2011

_____
Bruce Poon Tip