UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                         :
THE GAP, INC., and                                       :
GAP (APPAREL) LLC,                                       :      07 Civ.  9614 (AKH)
                                                         :
           Plaintiffs, and                               :      ECF Filing
     Counterclaim Defendants,                            :
                                                         :
           -against -                                    :      **DECLARATION OF ANDREW**
                                                         :      **HICKEY IN SUPPORT OF G.A.P**
G.A.P ADVENTURES INC.,                                   :      **ADVENTURES INC.'S MOTIONS TO**
                                                         :      **AMEND OR ALTER THE PERMANENT**
           Defendant, and                                :      **INJUNCTION AND ORDER AND TO**
     Counterclaim Plaintiff.                             :      **SUSPEND OR STAY THE**
                                                         :      **INJUNCTION PENDING APPEAL**
---------------------------------------------------------x

I, Andrew Hickey, do hereby declare as follows under penalty of perjury:

1. As of August 1, 2011, I will be a full-time employee of G.A.P Adventures, the defendant in this litigation. I am currently employed at Fareportal – a company overseeing several travel booking websites. I have been the Fareportal's Social Media Manager for 19 months and am responsible for building their on-line and social media community, including maintaining and building their blogs and social media sites. To most effectively use the social media, I must interact with several of the company's departments to gather and distribute information about the company on the social media sites. I have been involved in and helped Fareportal create promotions that are advertised on the sites, increased their brand awareness through social media and even provided customer service.

2. In my business, I have been focused on social media for 3 years. I maintain my own travel blog that has developed a following. It is through my travel blog that G.A.P Adventures became aware of me and my work, and my reputation for travel-related advice has earned me respect in the community that will assist me in building the social media community of G.A.P Adventures.

3. In my new position at G.A.P Adventures, I will have responsibility for maintaining the social media accounts of G.A.P Adventures, including Facebook and Twitter (hereafter referred to as "social media sites"). In order to prepare for my future role I have extensively studied the various existing websites and social media sites currently used by G.A.P Adventures.

4. On Facebook, companies and individuals can create accounts on which they can post content about themselves. Users can "like" or become a "fan" of companies/entities/people that they want to communicate with. For example, if I am a big fan of

a band, I can go to that band's Facebook account and become a "fan" of theirs or "like" them. By doing so, I would thereafter receive periodic updates on the band's activities when they issue any message, update, or post photos or videos.

5.     Similarly, on Twitter, individuals or companies can create accounts and post content about themselves or their activities, often referred to as "tweets".  Other people can "follow" individuals or companies that they are interested in, and by "following" them, users are able to read any of the posted content or "tweets" from that individual or company.

6.     As I understand it, G.A.P Adventures does not sell or make offers to sell on these social media sites.  They are used for informational purposes to followers or subscribers and nothing can be purchased from the sites.  People viewing the site are directed to the company's website or call centers to make reservations for upcoming trips.

7.     I also understand that G.A.P Adventures will be identified by a yet-to-be-determined name and trademark in the United States and continue to use the G.A.P Adventures name and trademark everywhere else.  Therefore, G.A.P Adventures intends to create different accounts on the social media sites for use of its new name in the United States.

8.     I further understand that G.A.P Adventures will retain its existing accounts on the social media sites going forward so non-U.S. "fans" or followers can simply maintain their status on the existing sites as a fan, subscriber, etc.

9.     When the new U.S. name and trademark is created, G.A.P Adventures will initiate new accounts on the social media sites that use and display the new name and trademark. These new accounts will be those where U.S. consumers are intended to follow G.A.P Adventures under its new name and trademark.

10. Based on my experience in my work with social media, as discussed further below, it is not possible for a company, such as G.A.P Adventures, to automatically switch all U.S. "fans" from following or subscribing to its old accounts in Canada which will continue to use the G.A.P Adventures name.

11. In order to have those U.S. "fans" follow on its new U.S. account, G.A.P Adventures will encourage its U.S. followers on each of the social media sites to voluntarily switch their following or subscribing on the social media sites from the current G.A.P Adventures account to the new account which uses the new name and trademark.

12. Specifically, G.A.P Adventures will post messages or updates encouraging U.S. users to follow them at the new account. To encourage this transition, G.A.P Adventures may provide incentives for U.S. users to switch to those other accounts. For example, G.A.P Adventures may consider providing a discount code to be used in booking a trip on G.A.P Adventures new U.S. website, for any U.S. user who switches their subscriber or follower status to the U.S.-specific account.

13. Although G.A.P Adventures will do everything it can to encourage U.S. users to switch to follow the account with the new U.S. name and trademark, it is not possible for G.A.P Adventures, or any other entity that utilizes a social media site, to absolutely prohibit U.S. users, based on their geography, from following the company on its foreign accounts which will retain use of the G.A.P Adventures name and trademark. This is simply the nature of the sites and the purpose of social media. All of these social media sites are intended to allow sharing, networking and discussion among their users, and none of them allow users to block content based on the country of residence of a user. Although individual users can be banned or blocked on Facebook or Twitter, with the cooperation of the operators of these sites, users of the social

media sites, like G.A.P Adventures, would often have no way to identify the country in which a follower or subscriber is living or logging on from and therefore could not identify all US users to block them.

14. G.A.P Adventures has approximately 23,000 fans on Facebook and approximately 9,500 followers on Twitter.

15. For each of these social media sites, G.A.P Adventures could set up new accounts using the new name and trademark in approximately 1-2 days of name selection with one exception. For a new account on Facebook, I approximate that it would take approximately 1 week to create the new account because there is a lot of content on that site that would need to be moved onto the new account and revised so as to include only the new name and trademark.

16. If G.A.P Adventures were to make a global change to its name and trademark, the process would be somewhat different.

17. To make a worldwide change to a corporate name or account on Facebook, G.A.P Adventures would email Facebook and request that Facebook change the name of its account and its Facebook website entirely. Facebook will then make technical changes that will redirect all G.A.P Adventures fans to the Facebook account and website with the new global name. During this process, Facebook may request additional information from the company, such as proof of company or trademark ownership.

18. The process for changing the name globally on Facebook is expected to take anywhere from 3 days to a few weeks. This process is somewhat unpredictable because the work of redirecting fans is to be performed by Facebook and not by G.A.P Adventures. In my experience, the timing of the process may be hastened if a company does significant advertising on Facebook. This is because Facebook will have assigned that company an advertising

representative who can be contacted directly for assistance.  On the other hand, companies that do not spend significant dollars advertising on Facebook, must email a general help account for assistance and their wait time is unpredictable.

19. However, the redirection must be performed by Facebook and not the company itself.  If this redirection is performed by an individual company and not by Facebook, there is the possibility that the redirecting of fans will not be properly completed and users attempting to visit the site may receive an error message rather than being redirected to the new site.  This would be a problem and could result in a loss of goodwill of Facebook fans.

20. Globally changing the G.A.P Adventures name and brand on Twitter is a simpler task.  On Twitter, the account holder, here G.A.P Adventures, can make a change to its name or logo without the assistance of Twitter employees.  It is expected that the changes could be completed in as little as one day.

21. If these kinds of global name changes were made on Facebook and Twitter, it would mean that all G.A.P Adventures communications to its fans and followers in every country of the world (*i.e.*, not just the United States) would not include its name G.A.P Adventures in its address or username.

22. I understand it is also possible that, depending upon a decision of an appeals court, G.A.P Adventures could be permitted to revert to using its current name in the United States.  If this were to occur, we would need to go through the procedures described above again – encouraging fans to switch back to our original accounts.  This could be a very perplexing and frustrating experience for fans.  In this case, implementing the changes described above would have been a very inefficient expenditure of time and resources which would be repeated in switching back the accounts to the current name.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 14, 2011

*/s/ Andrew Hickey*
Andrew Hickey